**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

STATE OF TEXAS, TEXAS GENERAL
LAND OFFICE, TEXAS DEPARTMENT
OF AGRICULTURE, RAILROAD
COMMISSION OF TEXAS,

and STATE OF KANSAS,

and STATE OF OKLAHOMA,

                Plaintiffs,

v.

U.S. DEPARTMENT OF THE INTERIOR,
U.S. FISH AND WILDLIFE SERVICE,
DEBRA HAALAND, in her official capacity
as SECRETARY OF THE INTERIOR,
MARTHA WILLIAMS in her official capacity
as DIRECTOR OF THE U.S. FISH AND
WILDLIFE SERVICE,

                Defendants.

Civil Action No. 7:23-cv-47-DC-RCG

**MOTION TO INTERVENE AS
DEFENDANTS AND MEMORANDUM
IN SUPPORT**

       Pursuant to Federal Rule of Civil Procedure 24, Conservation Groups, the Center for

Biological Diversity ("Center") and Texas Campaign for the Environment ("TCE"), respectfully

move to intervene as of right in the above-captioned action or, in the alternative, for permissive

intervention. Conservation Groups seek to defend the U.S. Fish and Wildlife Service's

("Service") decision to list the lesser prairie-chicken northern district population segment

("DPS") as threatened with a section 4(d) rule and the southern DPS as endangered under the

Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and to defend the significant time

and resources Conservation Groups have invested in lesser prairie-chicken conservation.

Conservation Groups meet the requirements of Federal Rule of Civil Procedure 24(a)(2) to intervene as of right: (1) the motion to intervene is timely filed at an early stage in the litigation; (2) Conservation Groups have a longstanding interest in obtaining federal protection for the lesser prairie-chicken; (3) Conservation Groups' interests may be impaired or impeded if the case results in the loss of protection for the species; and (4) the existing parties do not adequately represent Conservation Groups' interests. *Entergy Gulf States La. v. U.S. Env't Prot. Agency*, 817 F.3d 198, 203 (5th Cir. 2016) (citing *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)). Conservation Groups also meet the test for permissive intervention because they assert a claim or defense that shares a common question of law or fact with those raised in this case. Fed. R. Civ. P. 24(b).

In support of this motion, Conservation Groups submit the attached (1) Memorandum in Support, (2) Declaration of James Tutchton, (3) Declaration of Brett Hartl, (4) Declaration of Daniel Ginter, and (5) Declaration of Robin Schneider, and a Proposed Answer to the Plaintiffs' Complaint, as required by Federal Rule of Civil Procedure 24(c).

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### INTRODUCTION

Conservation Groups, Center for Biological Diversity ("Center") and Texas Campaign for the Environment ("TCE"), seek to intervene as Defendants in this case to safeguard their and their members' interests in protecting and conserving the lesser prairie-chicken (*Tympanuchus pallidicinctus*) and its habitat. The lesser prairie-chicken is a rare dancing grouse of the Southwest, known for the males' elaborate calls and showy displays of reddish orange air sacs while they perform mating dances in the spring. These birds require large, unfragmented parcels of native grassland to sustain their populations and can be found in southeastern Colorado,

southwest Kansas, the panhandle of northwestern Oklahoma, east-central New Mexico, and the northeastern and southwestern corners of the Texas panhandle. Once widespread, the lesser prairie chicken has been devastated by habitat loss, fragmentation, and climate change. As a result of the species' dramatic decline, the U.S. Fish and Wildlife Service ("Service") recently issued a Final Rule under the Endangered Species Act ("ESA") listing the lesser prairie-chicken northern distinct population segment ("DPS") as threatened with a section 4(d) determination and the southern DPS as endangered. 87 Fed. Reg. 72,674 (Nov. 15, 2022).

The Center and its allies have worked for almost three decades to attain protections for the lesser prairie-chicken and its habitat. Conservation Groups and their members' recreational, aesthetic, scientific, professional, and organizational interests in the lesser prairie-chicken and its habitat benefit from the ESA protections at issue. Plaintiffs, on the other hand, seek an order setting aside the Final Rule as contrary to law. If Plaintiffs succeed here, those protections will disappear, erasing decades of work to protect the species.

Plaintiffs' Complaint also raises issues that concern the proper administration of the ESA and the National Environmental Policy Act ("NEPA"). Resolution of these claims could affect how the Service evaluates other species for listing and protection. The Center has a longstanding interest in the effective administration of the ESA and NEPA, and regularly petitions the Service to protect imperiled species. The Center is thus concerned that this case could set precedent that could impact other species of concern to the Center and its members. Similarly, TCE has a long-standing history of advocating for a clean environment for the citizens and species of Texas. TCE is also concerned that this case could eliminate protections for the lesser prairie-chicken and its habitat and limit the tools available to advocate against actions that harm the environment and

the interests of their members. Accordingly, this Court should grant Conservation Groups'

motion to intervene so they can defend their unique interests in this case.

Pursuant to Local Court Rule CV-7(g), Counsel for Proposed Defendant-Intervenors

conferred with counsel for Plaintiffs and Federal Defendants regarding this Motion. Plaintiffs

and Federal Defendants take no position on the motion but reserve the right to respond.

**BACKGROUND**

**I.       The Imperiled Lesser Prairie-Chicken**

The lesser prairie-chicken is an imperiled bird from the grouse family found in the south-

and mid-western United States. Like other western grouse, male lesser prairie-chickens engage in

a unique and elaborate communal breeding display each spring to attract females. Both males

and females congregate at breeding grounds, known as "leks," where the males strut ("dance"),

vocalize ("boom"), and physically confront other males to defend their territories and court

females. The male repertoire includes displaying bright yellow eye combs, inflating reddish

orange air sacs, flutter-jumping, cackling, and foot-stomping. "Male prairie-chickens tend to

exhibit strong breeding site fidelity, often returning to a specific lek many times, even in cases of

declining female attendance and habitat condition." 87 Fed. Reg. 72,674, 72,675 (Nov. 25,

2022). "Females tend to establish nests relatively close to the lek." *Id.* "The preferred habitat of

the lesser prairie-chicken is mixed-grass prairies and shrublands, with the exception of some

areas in the northern extent of the range where shrubs play a lesser role." *Id.* at 72,677. Quality

habitat is essential "to provide cover for nests and young and to provide food resources as broods

mature into adults." *Id.* at 76,675.



*Lesser Prairie-Chicken     Credit: USFWS*

The lesser prairie-chicken's habitat "once ranged across the Southern Great Plains of Southeastern Colorado, Southwestern Kansas, Western Oklahoma, the Panhandle and South Plains of Texas, and Eastern New Mexico." *Id*. at 72,676. Today, the lesser prairie-chicken occupies a "substantially reduced portion of its presumed historical range." *Id.* The main threats facing this unique bird are habitat loss and degradation from livestock grazing, agriculture, oil and gas extraction, herbicides, mining and roads, and wind-energy production. *Id.* at 72,685–94. The birds' habitat is also lost to fences, power lines, and other tall structures that beckon predators to perch. *Id*. at 72,687.

In October 1995, the Center's predecessor organization, the Biodiversity Legal Foundation, submitted a petition to the Service to list the lesser prairie-chicken as threatened throughout its known historical range and designate critical habitat under the ESA. 86 Fed. Reg. 29,432, 29,434 (June 1, 2021). In 1997, the Service published a 90-day finding concluding that the Center's petition presented substantial information that indicated action may be warranted. 62 Fed. Reg. 36,482 (July 8, 1997). The Service subsequently published its 12-month finding concluding that listing the lesser prairie-chicken was warranted but precluded by other higher

priority listings and added the lesser prairie-chicken to its list of candidates for ESA protections in 1998, 63 Fed. Reg. 31,400 (June 9, 1998), where it remained for a decade.

In 2008, the Service changed the lesser prairie-chicken's listing priority number ("LPN") to one that reflected a change in threats to the species from "moderate" to "high" priority. 73 Fed. Reg. 75,176, 75,179–80 (Dec. 10, 2008). The LPN is the Service's ranking system to prioritize species on the candidate list. Instead of acting to protect the lesser prairie-chicken from, "an anticipated increase in the development of wind energy and associated placement of transmission lines throughout [its] estimated occupied range," the Service continued to leave the bird to languish on the candidate list. 86 Fed. Reg. 29,432, 29,434 (June 1, 2021). Following the 12 month-finding in 1998, the Service received several 60-day notices of intent to sue from the Center and other partners and suit was finally brought in 2010. *Id.* Pursuant to a settlement agreement, the Service agreed to publish a Proposed Rule listing the lesser prairie-chicken no later than September 2012, which was later modified to November. *Id.* Finally, in December 2012, the Service published a proposed rule to list the species as threatened. 77 Fed. Reg. 73,828 (Dec. 11, 2012). After much delay and a 6-month extension, the Service published a Final Rule listing the species as threatened with a 4(d) rule in 2014 (79 Fed. Reg. 19,973 (Apr. 10, 2014); 79 Fed. Reg. 20,073 (Apr. 10, 2014)) but the rule was vacated in 2015, *Permian Basin Petroleum Ass'n v. Dep't of Interior*, 127 F. Supp. 3d 700, 703 (W.D. Tex. 2015), leaving the lesser prairie-chicken, again, unprotected and vulnerable.

For a second time, in 2016 the Center and partners petitioned the Service to list the lesser prairie-chicken as endangered throughout its entire range or in three distinct population segments. 86 Fed. Reg. at 29,434. That same year, the Service published a positive 90-day finding that the petition to list the lesser prairie-chicken presented "substantial scientific or

commercial information indicating that the petitioned actions may be warranted." 81 Fed. Reg. 86,315, 86,315 (Nov. 30, 2016). Again, the Service failed to act in accordance with the ESA's mandatory deadlines and failed to issue a 12-month finding within a year of receiving the Center's petition. Due to the continued delay, in June 2019, the Center and partners filed a lawsuit challenging the Service's failure to make a 12-month finding for the lesser prairie-chicken. *Defs. of Wildlife v. Bernhardt*, No. 19-cv-1709 (D.D.C. June 12, 2019). The 12-month finding in that case was published in June 2021 pursuant to a stipulated settlement agreement. 86 Fed. Reg. at 29,432. The 12-month finding proposed designating the northern DPS of the lesser prairie-chicken as threatened with a section 4(d) rule and the southern DPS as endangered. *Id*.

Again, in October 2022, the Center brought a lawsuit against the Service for failure to issue its Final Rule. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv*., No. 22-cv-796 (D.N.M. Oct. 25, 2022). Only after the suit was filed was the Final Rule at issue in this case published in November 2022. 87 Fed. Reg. 72,674 (Nov. 25, 2022). However, the Service further delayed the species' protection at the request of politicians and other industry stakeholders until March 27, 2023. 88 Fed. Reg. 4,087 (Jan. 24, 2023).

II.   **Plaintiffs' Challenge to the Service's Final Rule Designating the Lesser Prairie-Chicken's Northern DPS as Threatened with a Section 4(d) Rule and the Southern DPS as Endangered**

Plaintiffs allege that the Service's Final Rule violates the ESA by failing to adequately consider existing voluntary conservation measures. Pls.' Am. Compl. ¶ 134. Additionally, Plaintiffs allege the Section 4(d) portion of the lesser prairie-chicken rule exceeds congressional authority granted under the ESA and the 4(d) rule violates APA notice and NEPA requirements. Pls.' Am. Compl. ¶¶ 141, 146–147, 150–151. Lastly, Plaintiffs allege the Service's DPS analysis does not comply with the ESA, APA, or DPS policy. Pls.' Am. Compl. ¶¶ 136–140.

**III.    Conservation Groups' Longstanding Interests in This Case**

The Center is a national, nonprofit environmental organization that works through science, law, and media to protect imperiled species and their habitats. Hartl Decl. ¶¶ 6–7. The Center is headquartered in Tucson, Arizona with offices in California, Oregon, and Washington, D.C. *Id*. In addition to 1.7 million online supporters, the Center has more than 88,000 members nationwide dedicated to the protection of species hovering on the brink of extinction, including the lesser prairie-chicken. *Id*. The Center has members who live near and regularly enjoy educational, recreational, and scientific activities related to the lesser prairie-chicken and its habitat. Hartl Decl. ¶¶ 13, 21; Ginter Decl. ¶ 9; Tutchton Decl. ¶¶ 6–11. Their interests in the lesser prairie-chicken and its habitat would be harmed if the Service's listing and 4(d) rules at issue here were invalidated. Ginter Decl. ¶ 13; Hartl Decl. ¶ 21; Tutchton Decl. ¶ 11–12.

The Center has a longstanding and specific interest in protecting the lesser prairie-chicken. The Center first petitioned for the protection of the species in 1995. 86 Fed. Reg. 29,434 (June 1, 2021). Since that time, the Center has worked tirelessly to protect the lesser prairie-chicken. Hartl Decl. ¶¶ 16–20. Now that the bird is finally listed, the Center has an equally strong interest in seeing it continue to receive the federal ESA protection needed for its recovery.

The Texas Campaign for the Environment is a 501(c)(3) non-profit membership corporation organized under the laws of the State of Texas dedicated to informing and mobilizing Texans to protect their health, their communities, and the environment. Schneider Decl. ¶ 3. TCE works to promote strict enforcement of environmental laws like the Clean Air Act, Clean Water Act, ESA, and National Environmental Policy Act to prevent pollution and degradation of lands and water in Texas. *Id*. ¶ 4. TCE has approximately 20,000 Texas members, including members living in western Texas near the lesser prairie-chicken habitat. *Id.* ¶ 7.

**LEGAL BACKGROUND**

**I.      The Endangered Species Act**

Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The Supreme Court has stated that the "plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978). In line with that intent, the ESA requires the Secretary of the Interior ("Secretary") to determine whether any species is "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The Secretary has delegated the administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

Pursuant to Section 4 of the ESA, any person can initiate the listing process by filing a petition with the Service to list a species. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). Within 90 days of receipt of such a petition the Service must make an initial "90-day finding" as to whether the petitioned action "may be warranted." 16 U.S.C. § 1533(b)(3)(A). Upon making a "may be warranted finding," the ESA provides one year from receipt of the listing petition for the Service to subsequently issue its 12-month finding or proposed rule utilizing the "best scientific and commercial data available" 50 C.F.R. § 402.14(g)(8); 16 U.S.C. § 1536(a)(2). *Id.* §§ 1533(b)(3)(A)–(B). Next, the 12-month finding is published in the Federal Register for public comment, after which a final rule must be issued within one year of that 12-month finding. *Id.* § 1533(b)(6)(A)(i).[1]

---

[1] The ESA provides an additional 6 months to complete rulemaking if there is "substantial disagreement regarding the sufficiency or accuracy of the available data." 16 U.S.C. §§ 1533(b)(6)(B)(i)–(iii).

A species is designated as "threatened" when it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," *id*. § 1532(20), and "endangered" when it is "in danger of extinction throughout all or a significant portion of its range," *id*. §1532(6). To make a listing determination, the Service evaluates five factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must make listing determinations "*solely* on the basis of the best available scientific and commercial information regarding a species' status." 50 C.F.R. § 424.11(b) (emphasis in original); *see also* 16 U.S.C. § 1533(b)(1)(A).

When a species is listed as endangered or threatened, Congress directs that such species receive protection under the ESA to prevent its extinction and aid in its recovery. These protections include the prohibition on "take" of individual members of endangered species, *id*. § 1538, designation of "critical habitat," *id.* § 1533(a)(3)(A)(i), and a requirement that federal agencies consult with the Service to "insure that any action authorized, funded, or carried out by [federal agencies] is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [its critical habitat]," *id*. § 1536(a)(2). For threatened species, the Service must issue regulations "necessary . . . to provide for the conservation of such species[,]" including prohibiting certain acts under section 9. *Id*. § 1533(d). For all listed species, the ESA requires the Service to "develop and implement" "recovery plans" for listed species, *id*. § 1533(f); authorizes the Service to acquire land for the

protection of listed species, *id.* § 1534; and authorizes the Service to make federal funds available to states to assist in species conservation, *id.* § 1535(d).

## ARGUMENT

The Center has fought for nearly three decades to secure ESA protections for the lesser prairie-chicken. Similarly, TCE has fought for years for the proper implementation and enforcement of environmental laws like NEPA and the ESA for the protection of the environment and habitat for species like the lesser prairie chicken. Those protections are critical for the species' survival. This lawsuit threatens those protections and, thus, threatens Conservation Groups and their members' interests in the lesser prairie-chicken and its habitat.

Federal Defendants do not adequately represent Conservation Groups' interests and focused dedication to the lesser prairie-chicken and its habitat. The Service's almost 30-year delay in listing the species and its consistent failure to meet statutory deadlines to list the species has come at the expense of Conservation Groups' interests. Earlier this year, Conservation Groups wrote to Interior Secretary Deb Haaland decrying the Service's decision to delay the Final Rule's effective date at the request of political interests, further delaying the bird's listing from going into effect. The Service and Conservation Groups have continually lacked alignment on the species' urgent need for federal protection. Conservation Groups thus are properly concerned that their interests could again diverge during this litigation.

Accordingly, this Court should grant Conservation Groups' motion to ensure that their and their members' interests are fully and adequately represented in this case.

## I. Conservation Groups Have Standing to Intervene in this Case.

Intervention as of right requires an independent showing of Article III standing. *Banks v. St. James Par. Sch. Bd.*, 757 F. App'x 326, 331 (5th Cir. 2018) (citing *Town of Chester v. Laroe*

*Estates, Inc.*, 581 U.S. 433, 439 (2017)). An organization has associational standing when "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). An organization's member meets the Article III standing requirements if the member "suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant, and that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019) (cleaned up).

### A. Conservation Groups' Members Have Article III Standing.

To establish Article III standing, there must be an "injury in fact." *Id*. at 537 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. Here, the Center's members have Article III standing to sue because they have recreational, scientific, and aesthetic interests in observing the lesser prairie-chicken in its natural habitat. *Lujan,* 504 U.S. at 562–63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."). If even one plaintiff has standing, that is sufficient for the Court to consider the case. *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022).

Center member Brett Hartl is an amateur naturalist who photographs and records wildlife, including the lesser prairie-chicken, in their natural habitat. Hartl Decl. ¶¶ 10, 13. Hartl has viewed the species twice on separate trips to New Mexico and Kansas in 2008 and 2013. *Id*. at ¶

13. Additionally, he attempted to experience the species in the wild in 2018 and 2022 with no success but plans to try again in the summer of 2023. *Id.* Center member James Tutchton has had a long standing recreational, professional, and aesthetic interest in the lesser prairie-chicken since the 1990s. *See generally* Tutchton Decl. Tutchton hunted the species prior to learning of its dwindling population in 1995. *Id.* at ¶ 6. Since then, he has witnessed the species in its habitat on several occasions and participated in the legal efforts to protect and preserve the species. *Id.* at ¶ 6–8. Currently, he is the Preserve Manager and Acting Executive Director of the Southern Plains Land Trust, an organization that also works to protect the species in Colorado. *Id.* at ¶¶ 3, 10. Lastly, Center member Daniel Ginter is an avid birder that has also visited lesser prairie-chicken habitat on many occasions but has been unable to view the species due to its degraded habitat and dwindling population. Ginter Decl. at ¶¶ 6, 9.

Second, for Article III standing, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). In this case, Plaintiffs seek relief that would harm Conservation Groups' members and their interests. Center members like Hartl, Ginter, and Tutchton have been injured by the delayed listing of the lesser prairie-chicken because ESA protections are crucial to the species' survival and recovery. *See* generally Hartl, Ginter and Tutchton Decls. Center members would be further injured by a successful challenge of the species' listing decision that could lead to the removal of protections for lesser prairie-chicken and its habitat. *See, e.g.*, Tutchton Decl. at ¶¶ 11–12. Fewer lesser prairie-chickens make it more difficult for Center members like Hartl and Ginter to observe and/or photograph the species harming their recreational and aesthetic interests. Hartl Decl. ¶ 21; Ginter Decl. ¶ 13. And the

potential extirpation or extinction of the bird for want of adequate protections would profoundly injure the Center's members. Tutchton Decl. ¶¶ 9, 11–12.

Lastly, Article III requires that the injury can be "redressed by a favorable judicial decision." *Ctr. for Biological Diversity*, 937 F.3d at 536. Conservation Groups' members' injuries are redressable because an order of this Court upholding the listing decision would vindicate their interests in seeing the lesser prairie-chicken continue to receive ESA protection. For these reasons, Conservation Groups' members independently have Article III standing.

**B. Conservation Groups Meet the Additional Requirements for Associational Standing.**

Conservation Groups meet the additional criteria for associational standing because "the interests the association seeks to protect are germane to the purpose of the organization; and neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party*, 459 F.3d at 587. As an organization dedicated to environmental protection and the preservation of species, including the protection of the lesser prairie-chicken and its habitat, the Center has a clear interest germane to its purpose in defending the lesser prairie-chicken's listing under the ESA. This interest is further demonstrated by its decades-long efforts to ensure ongoing protections for the lesser prairie-chicken. Likewise, TCE has a clear interest in defending the lesser prairie-chicken and its habitat under the ESA as an organization dedicated to the preservation of Texas and its environment. TCE has also challenged oil and gas projects in the Permian and the Gulf on behalf of its resident members and endangered species. Moreover, Conservation Groups can litigate this case without their members' participation as named intervenors. Therefore, Conservation Groups meet the requirements for associational standing to intervene on behalf of their members.

II.     **Conservation Groups Have a Right to Intervene.**

Pursuant to Federal Rule of Civil Procedure 24(a), Conservation Groups have a right to intervene here because (1) the motion to intervene is timely, (2) the Center and TCE assert an interest that is the basis of controversy in this matter, (3) the disposition of this matter may impair or impede upon Conservation Groups' interests, and (4) the existing parties do not adequately represent Conservation Groups' interests. Fed. R. Civ. P. 24(a)(2); *see also Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). The Fifth Circuit has explained that an "intervention of right must be measured by a practical rather than technical yardstick." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005). Thus, intervention is typically granted where "no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d at 657; *Ross*, 426 F.3d at 753. Because Conservation Groups satisfy all requirements for intervention as of right, and this Circuit's precedent favors intervention, the Court should grant the motion.

A.  **Conservation Groups' Motion to Intervene is Timely.**

When evaluating the timeliness of intervention, the Court considers:

(1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

*Glickman*, 256 F.3d at 376 (citations omitted). Timeliness "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (internal citations omitted).

Conservation Groups' motion to intervene is timely because it was submitted soon after learning that Plaintiffs challenged the Service's final listing and 4(d) rule on the lesser prairie-chicken. *See Premiere, Inc. v. Commercial Underwriters Ins. Co.*, No. 02-3199, 2004 U.S. Dist. LEXIS 54, at *5 (E.D. La. Jan. 5, 2004) (motion to intervene considered timely when filed promptly after learning of the dispute). Furthermore, this matter is in its early stages of litigation. The Defendants have very recently filed their answer, no briefing schedule is set, and there has been no other action taken by this Court. Thus, there is no risk of prejudice to existing parties by allowing this intervention.

**B. Conservation Groups Have an Interest at Stake in This Litigation.**

Conservation Groups' interests in the lesser prairie-chicken are "related to the property or transaction that forms the basis of the controversy in the case." *Glickman*, 256 F.3d at 375 (citations omitted). As discussed *infra*, Conservation Groups and their members have recreational, aesthetic, scientific, and professional interests in the protection and survival of the lesser prairie-chicken and its habitat. As the Fifth Circuit has stated "a movant who shows standing is deemed to have a sufficiently substantial interest to intervene." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 566 n.3 (5th Cir. 2016) (quoting *LULAC v. City of Boerne*, 659 F.3d 421, 434 n.17 (5th Cir. 2011)).

Furthermore, Conservation Groups have a "direct, substantial, [and] legally protectable" interest in maintaining the threatened and endangered species protection for the lesser prairie-chicken and its habitat for which the Center has long advocated. *Texas v. United States*, 805 F.3d at 657. While there is no "clear definition of the nature of the 'interest . . .' that is required for an intervention of right," *Wal-Mart Stores*, 834 F.3d at 566, the Fifth Circuit has held that "'public spirited' civic organizations that successfully petition for adoption of a law may intervene to

vindicate their 'particular interest' in protecting that law," *id.* at 567 (citations omitted). Although listing decisions should take no more than two years under the ESA, the Center has worked for almost three decades to secure protections for the lesser prairie-chicken, filing three lawsuits and submitting two petitions. Most recently, in 2022, the Center filed a lawsuit challenging the Service's failure to issue a Final Rule for the lesser prairie-chicken, which led to the publication of the rule at issue in this case. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 22-civ-796 (D.N.M. Oct. 25, 2022). Here, Plaintiffs seek to overturn the very protections for which the Center successfully petitioned on behalf of its members. Thus, Conservation Groups' interests are sufficiently related to the "transaction that forms the basis of the controversy in the case" to support intervention as of right. *Glickman*, 256 F.3d at 375.

### C. An Adverse Judgment Would Harm the Conservation Groups' Interests.

Furthermore, "the disposition of [this] case may impair or impede the [Conservation Groups'] ability to protect [their] interest." *Glickman*, 256 F.3d at 375 (citations omitted). In determining whether impairment exists, the Court must consider the "totality of the circumstances." *Tot Power Control, S.L. v. AT&T Mobility LLC*, No. 6:21-CV-00107, 2021 U.S. Dist. LEXIS 195476, at *5 (W.D. Tex. Oct. 8, 2021) (citing *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996)). Based on the totality of the circumstances, a decision removing ESA protections for the lesser prairie-chicken would impair the Conservation Groups' ability to protect the species and its habitat and undermine the Center's mission of saving life on Earth and TCE's mission of preserving Texas and its resources. These interests are demonstrated by the work done by the Center and TCE to protect the species and their members' interests in studying and observing the species.

The Center petitioned the Service in 2016 to list the lesser prairie-chicken. 86 Fed. Reg. at 29,434. Because the Service failed to act in a timely manner under the ESA, the Center filed multiple lawsuits to advance the petition. *Id.* If protections were removed, the Center would be forced to spend more resources to again seek protections for the species after already working tirelessly for almost three decades. Even worse, the lesser prairie-chicken may slide further toward extinction if protections are removed, harming the Center's members' interest in observing the species in its habitat. *See generally* Hartl Decl.

**D. Federal Defendants Do Not Adequately Represent Conservation Groups' Interests.**

The final requirement for an intervention as of right is that "the existing parties do not adequately represent the potential intervener's interest." *Glickman*, 256 F.3d at 375. This burden is "minimal" and is satisfied if existing parties *may* not adequately represent intervenors. *Id.* at 380 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994); *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Relevantly, in the Fifth Circuit, representation is presumed adequate only when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Entergy Gulf*, 817 F.3d at 203 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014)). To overcome this presumption, the movant must show "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* This is accomplished by "specif[ying] the particular ways in which their interests diverge from the [party's] and then identif[ying] the particular way in which these divergent interests have impacted the litigation." *Id.* at 204 (quoting *Texas v. United States*, 805 F.3d at 663).

While Federal Defendants are charged with defending the Final Rule, their actions have historically been averse to Conservation Groups' interests in timely and effective protection for the species. As stated above, the Center has worked tirelessly to secure threatened and

endangered species protection for the lesser prairie-chicken. Hartl Decl. at ¶¶ 16–20. Despite the Center's urgent petitions for listing, Federal Defendants delayed the protections for the lesser prairie-chicken for nearly three decades, leaving the species to languish. *Id*. In fact, the Center had to petition and file lawsuits at nearly every step of the listing process before the Service would even publish the Final Rule at issue. *Id*. Even after listing the species, contrary to the Center's interests, Federal Defendants further delayed the effective date of the rule by six months at the mere request of politicians and industry. 88 Fed. Reg. 4087 (Jan. 24, 2023). If Federal Defendants choose to settle this case as they have done in similar matters, Conservation Groups' interests would not be represented.[2] Because Federal Defendants do not (and have not) adequately represented Conservation Groups' interests in the protection of the lesser prairie-chicken, intervention is warranted.

## III.     Alternatively, Conservation Groups Merit Permissive Intervention.

Pursuant to Federal Rule of Civil Procedure 24(b), Conservation Groups also move in the alternative for permissive intervention in this matter. Permissive intervention "is appropriate when: (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Endurance Am. Ins. Co. v. Lloyd's Syndicate 3624*, No. 3:23-CV-0133, 2023 U.S. Dist. LEXIS 75051, at *3-4 (N.D. Tex.

---

[2] For example, in *Entergy Gulf v. EPA*, plaintiffs sought to prevent disclosure of records under the Freedom of Information Act ("FOIA") which it alleged contained confidential business information. 817 F.3d 198 (2016). EPA advocated for a stay until Entergy reviewed the documents. *Id.* at 204. Contra EPA, proposed intervenor-defendant Sierra Club opposed the stay because it would delay their receipt of information pursuant to their own FOIA request and requested bifurcation to continue the stay for some documents but not others. *Id*. at 205. Thus, the Fifth Circuit found Sierra Club's interests diverged from federal defendant EPA's interests regarding resolution and strategy, warranting intervention as of right. *Id.* at 206.

Apr. 28, 2023) (quoting *DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019)). As this Court has previously stated, permissive intervention "is wholly discretionary." *Nat'l Press Photographers Ass'n v. McCraw*, 594 F. Supp. 3d 789, 812 (W.D. Tex. 2022) (citation omitted); *accord Hanover Ins. Co. v. Superior Labor Servs.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) ("Even if not warranted as a matter of right, the Court has broad discretion to allow permissive intervention where, as here, the parties seeking to intervene assert claims with a common question of fact or law in connection with the main action.").

Conservation Groups' intervention, if permitted, is timely and would not cause undue delay nor prejudice the original parties. Conservation Groups are seeking to intervene in the matter shortly after the case was filed and before the setting of a briefing schedule; further, admission of the Conservation Groups to the case would not alter that schedule when it is established. *See Texas v. Dep't of Homeland Sec.*, Civil Action No. 6:23-CV-00007, 2023 U.S. Dist. LEXIS 68949, at *10 (S.D. Tex. Apr. 19, 2023) (granting permissive intervention even though the motion came two months before the trial date because it would not "unduly delay or prejudice" the case.)

Conservation Groups' defense of the Final Rule also shares common question of law and facts with the instant case. Plaintiffs challenge the lesser prairie-chicken Final Rule, and Conservation Groups seek to defend the rule's legality. The case also concerns interpretations of the ESA and other federal laws with which Conservation Groups have considerable expertise and unique perspectives. In this case, "the Proposed Intervenors' defenses, the Federal Government's defenses, and the Plaintiff States' claims arise from the same set of facts and considerations:" the Service's final listing rule for the lesser prairie-chicken. *Texas v. Dep't of Homeland Sec.*, 2023 U.S. Dist. LEXIS 68949 at *9 (noting that "[d]istrict courts within the Fifth Circuit regularly

permit intervention under similar circumstances." (citations omitted)). For the reasons stated,

Conservation Groups should be granted permissive intervention.

## CONCLUSION

For the reasons set forth above Conservation Groups respectfully request that this Court

grant their motion to intervene as of right or, in the alternative, for permissive intervention.

DATED: June 5, 2023                          Respectfully submitted,

IRVINE & CONNER PLLC

by:   */s/ Charles Irvine*
CHARLES IRVINE
Texas Bar No. 24055716
charles@irvineconner.com
4709 Austin St.
Houston, Texas 77004
Telephone: (713) 533-1704

CENTER FOR BIOLOGICAL DIVERSITY

Lauren A. Parker
(*Pro hac vice pending*)
lparker@biologicaldiversity.org
Jason C. Rylander
(*Pro hac vice pending*)
jrylander@biologicaldiversity.org
1411 K Street NW, Suite 1300
Washington, D.C. 20005
Telephone: (202) 961-4820

*Attorneys for Proposed Defendant-Intervenors*
*Center for Biological Diversity and Texas*
*Campaign for the Environment*