IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, TEXAS GENERAL LAND OFFICE, TEXAS DEPARTMENT OF AGRICULTURE, RAILROAD COMMISSION OF TEXAS, STATE OF KANSAS, STATE OF OKLAHOMA, PERMIAN BASIN PETROLEUM ASSOCIATION, NATIONAL CATTLEMAN'S BEEF ASSOCIATION, TEXAS CATTLEFEEDER'S ASSOCIATION, KANSAS LIVESTOCK ASSOCIATION, OKLAHOMA CATTLEMAN'S ASSOCATION, AND NEW MEXICO CATTLE GROWERS ASSOCIATION, | § § § § § § § § § § § § § § § § § § § | |
| *Plaintiffs,* | § § | MO:23-CV-00047-DC |
| v. | § § | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES FISH AND WILDLIFE SERVICE, DEBRA HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE INTERIOR; MARTHA WILLIAMS, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE U.S. FISH AND WILDLIFE SERVICE, | § § § § § § § § § § § § | |
| *Defendants.* | § | |

**ORDER**

Two conservation groups—the Center for Biological Diversity ("Center") and the Texas Campaign for the Environment ("TCE")—together seek to intervene as a matter of right (or, in the alternative, seek permissive intervention) in this action that involves the United States Fish and Wildlife Service's decision to list populations of the lesser prairie-chicken as threatened or endangered under the Endangered Species Act. After due consideration, the Court **DENIES** the motion for the reasons stated below.

## I. BACKGROUND

The lesser prairie-chicken lives in grassy prairies and shrublands across parts of Colorado, Kansas, Oklahoma, and Texas. Last year, Fish & Wildlife published a Final Rule that (1) listed as threatened the lesser prairie-chicken's northern population segment and (2) listed as endangered the southern population segment.[1] To support these listings, Fish & Wildlife claims that industrial activities impact the lesser prairie-chicken's ability to survive in these areas, causing their population to dwindle.

Here, two conservation groups move together to intervene in support of Fish & Wildlife's decision to list the bird. The first group, the Center for Biological Diversity, is a national, nonprofit organization which seeks to protect endangered and threatened species, among other things.[2] Center is based in Arizona with offices in California, Oregon, and

---

[1] Endangered and Threatened Wildlife and Plants; Lesser Prairie-Chicken; Threatened Status With Section 4(d) Rule for the Northern Distinct Population Segment and Endangered Status for the Southern Distinct Population Segment, 87 Fed. Reg. 72,674 (Nov. 25, 2022).
[2] Doc. 25-3 at ¶ 6–8. Note that the Court recently consolidated a companion matter (filed on the same day by private parties) into this cause number. *See Permian Basin Petroleum Ass'n v. U.S. Dep't Interior*, No. 7:23-CV-49-DC-RCG (W.D. Tex. June 22, 2023).

Washington, D.C., and comprises 88,000 members.[3] The second group, the Texas Campaign for the Environment, is a nonprofit organization whose estimated 20,000 members work broadly toward protecting Texas' health, its communities, and, lastly, the environment—such as the natural habitat of the state's native species like the lesser prairie-chicken.[4] TCE is incorporated under the laws of the State of Texas.[5] Together, both groups claim an interest in protecting the lesser prairie-chicken from habitat loss and degradation.

For over thirty years, Center petitioned and re-petitioned Fish & Wildlife to list the lesser prairie-chicken as a protected species under the Endangered Species Act. Perhaps more accurately, Center's predecessor organization first advocated for listing the lesser prairie-chicken as a threatened species in 1995, landing the bird on Fish & Wildlife's priority list in 1998.[6] Center's current iteration first sued in 2010 alleging that Fish & Wildlife failed to act within the ESA's mandatory listing deadlines.[7] As a result of that dispute's settlement agreement, Fish & Wildlife agreed to publish a Proposed Rule in 2012. This Proposed Rule led to a Final Rule in 2014 which was vacated by this Court in *Permian Basin Petroleum Association v. Department of Interior*.[8] Center sued Fish & Wildlife again in 2019 seeking a

---

[3] *Id.*
[4] *Id.*
[5] Doc. 25-4 at ¶ 3–7.
[6] Doc. 25 at 5, 6.
[7] *Id.* at 6.
[8] *See Permian Basis Petroleum Ass'n v. Dep't of Interior*, 127 F. Supp. 3d 700, 703 (W.D. Tex. 2015).

Proposed Rule,[9] and in 2022 Fish & Wildlife published the Final Rule that is the subject of this case.[10]

Various state and private entities then filed suit against the Government alleging various procedural and legal defects in violation of the Endangered Species Act, the Administrative Procedure Act, and the National Environmental Policy Act.[11] Not long after, Center and TCE moved to intervene, as the Court understands it, for the limited purpose of defending Fish & Wildlife's decision to list the lesser prairie-chicken.[12]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure distinguish two routes for intervention when no right is otherwise created by statute.[13] Under Rule 24(a), a party may intervene as a matter of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[14] A court evaluates a Rule 24(a) motion by "considering whether: (1) the motion is timely; (2) the movant has an interest in the action's subject matter, (3) the movant shows that the disposition of the action may impair or impede the movant's interest, and (4)

---

[9] *See Def. of Wildlife v. Bernhardt*, No. 19-CV-1709 (D.D.C. June 12, 2019).
[10] *See Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 22-CV-796 (D.N.M Oct. 25, 2022).
[11] Doc. 10.
[12] Doc. 25 at 1. The conservation groups also assert that they also wish to intervene "to defend the significant time and resources [that they] have invested in the lesser prairie-chicken conservation." *Id.* The Court understands that the groups' time and resources spent on the bird may suggest an interest in the subject matter of the case, but do not imply an independent and distinct claim for intervention purposes.
[13] *See* FED. R. CIV. P. 24
[14] FED. R. CIV. P. 24(a)(2).

4

the movant's interest is adequately represented by existing parties."[15] Failure to meet any of one of these requirements forbids intervention as a matter of right.[16]

The other route, Rule 24(b)'s Permissive Intervention, recognizes a court's power to permit intervention of any party who "shares with the main action a common question of law or fact."[17]

### III. DISCUSSION

**A. Standing**

To begin, the Court briefly considers whether Center and TCE must show standing to support their motion to intervene. Both assert that they have Article III standing to defend Fish & Wildlife's decision to list the lesser prairie-chicken. Perhaps. But an intervenor-defendant must show standing only when they seek relief that differs from that requested by the existing parties.[18] Meaning, certain intervenor-defendants—those who do not raise a counterclaim, cross-claim, or any other claim for relief—need not show standing to successfully intervene. Center and TCE bring no new claims and therefore standing analysis is not warranted.

---

[15] *Aransas Project v. Shaw*, 404 F. App'x 937, 940 (5th Cir. 2010) (cleaned up) (citing *Heaton v. Monogram Credit Card Bank of Ga.,* 297 F.3d 416, 422 (5th Cir. 2002).
[16] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).
[17] FED. R. CIV. P. 24(b)(1)(B).
[18] *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 947 n.3 (N.D. Tex. 2019) (providing comprehensive analysis for why standing is not required for intervenor-defendants when no additional relief is sought).

**B. Intervention as a Matter of Right**

The Court now considers whether Center and TCE meet the requirements for intervention as a matter of right under Rule 24(a) and concludes that they do not.

***1. Center and TCE timely applied to intervene***

A movant must first show that their motion is timely. To determine timeliness, a court considers: (1) when the movants knew or should have known of the suit, (2) the prejudice to the existing parties if intervention is granted, (3) the prejudice to the would-be intervenors if intervention is not granted, and (4) any other circumstances for or against intervention.[19] A motion may be timely if the movant shows that they filed their motion as soon as they realized their interests would not be adequately represented.[20]

The Court finds that Center and TCE timely moved to intervene. The conservation groups assert that they filed their motion soon after they learned of this suit and realized that their interest might not be adequately represented.[21] The Court gives weight to their assertions, given they moved to intervene early in litigation (and before the Court set a briefing schedule). The motion also remains unopposed. So no dispute here exists as to the filing timeline and the parties likewise do not argue that intervention will cause them prejudice. Given the above, the Court finds that Center and TCE timely filed to intervene.

---

[19] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).
[20] *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) ("Generally, filing a motion to intervene as soon as an intervenor realizes its interests are not adequately protected is sufficient to meet the timeliness requirement.") (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).
[21] Doc. 25 at 16.

***2. Center and TCE have an interest in this action***

Second, a movant must show that they have a "direct, substantial, legally protected interest in the action."[22] But, that interest need not be legally enforceable.[23] Rather, it need only be "of the type that the law deems worthy of protection."[24]

Center and TCE argue that their interest in the environment or conservation of animals are of the type worthy of protection. They cite decades of general advocacy for animals and many petitions for their listing as a protected species. For instance, Center has long advocated for the listing of the lesser prairie-chicken and has routinely sued Fish & Wildlife to publish the Final Rule being challenged here.[25] The conservation groups therefore meet their minimal burden in satisfaction of the second requirement.

***3. An adverse judgment would harm Center and TCE's interest***

Third, a movant must show that disposition of the action may impair or impede their ability to protect their interest.[26] The impairment must be practical and not merely theoretical.[27]

Center and TCE show that their interest might be impaired if the Court rules against the Government in this matter. Because this case concerns whether Fish & Wildlife's Final Rule complies with the ESA, APA, and NEPA,[28] a determination of this issue may impact

---

[22] *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009).
[23] *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015).
[24] *Id.*
[25] Doc. 25 at 5, 6.
[26] *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014); *Sierra Club*, 18 F.3d at 1207.
[27] *Brumfield*, 749 F.3d at 344.
[28] Doc. 10 at ¶ 6.

7

the conservation groups' stated reasons for intervention—*i.e.*, defending the Final Rule. Thus, the conservation groups meet the third requirement.

**4. *Center and TCE's interests are adequately represented***

Finally, a movant meets the fourth requirement "if the applicant shows that representation of his interest may be inadequate."[29] Inadequacy enjoys a minimal burden.[30] But representation is presumed adequate when the movant has "the same ultimate objective as a party to the lawsuit."[31] Center and TCE move to intervene for the limited of purpose of defending Fish & Wildlife's decision to list the lesser prairie-chicken and bring no new or differing cause or claim. Because the conservation groups' objective is no different from the Government, the Court presumes representation is adequate.

Of course, a movant may rebut the same-objective presumption by showing adversity of interest in a manner germane to the case.[32] To show the requisite adversity of interest, a movant must "specify the particular ways in which their interests diverge from the party's and then identify the particular ways in which these divergent interests have impacted the litigation."[33]

And Center and TCE fail to rebut the presumption of adequate representation. True, the Government must balance their decision to list the bird with broader public interests,[34]

---

[29] *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)).
[30] *Id.*
[31] *Id.*
[32] *Entergy Gulf States La., L.L.C. v. U.S. Env't Prot. Agency*, 817 F.3d 198, 204 (5th Cir. 2016) (quoting *Texas*, 805 F.3d at 662–63).
[33] *Id.* (cleaned up).
[34] *See Sierra Club*, 18 F.3d at 1208 ("The government must represent the broad public interest, not just the economic concerns of the [movants] . . .").

8

whereas the conservation groups' sole interest in this case is the affirmative and timely upholding of Fish & Wildlife's Final Rule.[35] But the conservation groups fail to show how the Government's divergent interests have impacted the litigation. Sure, the Government voluntarily delayed the effective date of the Final Rule citing concerns from the public and other federal agencies.[36] But the delay—as well as previous actions filed by Center against Fish & Wildlife—came before Plaintiffs filed this suit and is therefore unrelated to the current litigation. The conservation groups offer only speculation that the Government's broader interests may alter the present case.

Accordingly, because the groups fail to satisfy the fourth requirement, they fail to show entitlement to intervention of right.

## C. Permissive Intervention

Alternatively, Center and TCE ask that the Court grant permissive intervention. Like their request to intervene as a matter of right, this request remains unopposed. Nevertheless, the Court declines to grant permissive intervention given the power to do so is wholly within the Court's discretion. Because Center and TCE bring no claim or counterclaim, intervention will result in duplication and delay of the case's resolution. The conservation groups may more appropriately represent their interest by filing an amicus brief of no more than twenty pages.

---

[35] Doc. 25 at 18.

[36] Endangered and Threatened Wildlife and Plants; Lesser Prairie-Chicken; Threatened Status With Section 4(d) Rule for the Northern Distinct Population Segment and Endangered Status for the Southern Distinct Population Segment; Delay of Effective Date, 88 Fed. Reg. 4087-01 (Jan. 24, 2023).

## III. CONCLUSION

For the reasons discussed above, Center and TCE fail to meet the criteria for Rule 24 intervention and the Court declines to permit intervention under its discretionary powers. The Court welcomes each to file as friends of the Court.

It is therefore **ORDERED** that Center and TCE's Motion to Intervene is **DENIED**.

It is so **ORDERED.**

**SIGNED this 29th day of August, 2023.**

**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**