IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **MO:23-CV-00047-DC** |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF THE INTERIOR, et al., | § | |
| *Defendants.* | § | |

## OMNIBUS ORDER REGARDING THE ADMINISTRATIVE RECORD

The State Plaintiffs[1] and the Industry Plaintiffs[2] in this matter have challenged the Administrative Record lodged by the Service. [3] The Industry Plaintiffs move to strike an internal memorandum which they believe the Service manufactured after the Service's second listing decision.[4] It would be difficult to imagine that a document generated *after* such a decision would be available to the Service for consideration in making that decision, so the argument goes. They likewise move to compel the Administrative Record's completion and supplementation, accusing the Service of strategically excluding key documents—such as raw data and modeling, third-party communications, all documents and communications

---

[1] "State Plaintiffs" refers to State of Texas, Texas General Land Office, Texas Department of Agriculture, Railroad Commission of Texas, State of Kansas, and State of Oklahoma.
[2] "Industry Plaintiffs" refers to Kansas Independent Oil & Gas Association, The Petroleum Alliance of Oklahoma, Permian Basin Petroleum Association, National Cattlemen's Beef Association, Texas Cattle Feeders Association, Kansas Livestock Association, New Mexico Cattle Growers Association, Oklahoma Cattlemen's Association.
[3] Other than in moments where this order may require more granularity, "Service" refers to the United States Department of the Interior, United States Fish and Wildlife Service, Debra Haaland, in her official capacity as Secretary of the Interior, and Martha Williams, in her official capacity as Director of the U.S. Fish and Wildlife Service.
[4] ECF No. 49.

circulated internally during the data-gathering phase, and all documents and communications circulated internally during the deliberative phase—seemingly in part based on communications present in the Administrative Record that allegedly show the Service directed a team of third-party biology experts to support a predetermined position.[5] State Plaintiffs object to a different set of documents and information they argue failed to appear in the Administrative Record.[6] These excluded documents, State Plaintiffs allege, have been reviewed or considered by the Service when deciding to list the lesser prairie-chicken as endangered. According to State Plaintiffs, the Service has since given its word that some of these documents were neither considered nor reviewed, and State Plaintiffs have agreed to narrow the scope of their objections on good faith.[7] If either set of plaintiffs are correct, the Administrative Record is incomplete despite the Administrative Procedure Act's requirement that review of an agency action must be based on "the whole record." 5 U.S.C. § 706.

## DISCUSSION

### I.    Industry Plaintiffs' Motion to Strike the internal memorandum

An agency must base its decision on the full administrative record as it was at the time it made its decision.[8] "The record's completeness is designated by the agency, which is entitled to a presumption of regularity in discharging this duty."[9] "This presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good

---

[5] ECF No. 50.

[6] ECF No. 51.

[7] ECF No. 62.

[8] *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).

[9] *W&T Offshore, Inc. v. Jewell*, No. 14-CV-2449, 2016 WL 5724907, at *2 (W.D. La. Sept. 30, 2016) (citing *Maritel v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)).

faith, and in accordance with law and governing regulations, and is valid and binding unless 'well-nigh irrefragable proof rebuts or overcomes it.'"[10] "[A] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."[11]

After reviewing the Administrative Record, Industry Plaintiffs identified a memorandum titled "LEPC Summary of Conservation Programs" bearing a post-decisional creation date.[12] Industry Plaintiffs argue that the Service generated this memo after deciding to list the lesser prairie chicken as endangered in an attempt to explain after the fact why the conservation measures did not follow its own Policy for Evaluating Conservation Efforts When Making Listing Decisions—often referred to as "PECE".[13] Industry Plaintiffs likewise remind the Court that "[t]his Court vacated the Service's 2014 listing decision for not following [that very same policy.]"[14] As to untimeliness, Industry Plaintiffs point to the Administrative Record's index as evidence that the Service generated the LEPC Summary memo two weeks after the Service received a copy of the Original Complaint.[15] So alerted, Industry Plaintiffs wrote to the Service and asked for a native version of the memo, with intact metadata, and the LEPC Summary memo's creation date.[16] The Service balked.

Predictably, Industry Plaintiffs argue that the date reflected on the Index should be credited and that the LEPC Summary should be struck as improper post hoc rationalization

---

[10] *Schism v. United States*, 316 F.3d 1259, 1302 (Fed. Cir. 2002).
[11] *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019).
[12] ECF No. 49 at 2.
[13] *Id.* at 3–4.
[14] *Id.* at 1.
[15] *Id.* at 2.
[16] *Id.*

in violation of Service guidelines for record keeping and compilation of the Administrative Record.[17] In response, the Service argues that metadata was not before the decisionmaker to consider and therefore cannot properly be put before the Court.[18] The Service also contends that the date reflected in the Index represents the date the "Service converted the native version of the document to PDF to include with the Administrative Record."[19] The Service characterizes the LEPC Summary memo as a "living document" created five months before the Final Rule and subject to routine updates as new information came in.[20] Inclusion of the *conversion* date was just a result of typographical inadvertence.[21] Clay Nichols, the Coordinator and Science Lead for the lesser prairie-chicken, explains this mix up in his affidavit.[22]

The presumption of regularity begins to tremor when the Service creates irregularity by its own hand. It should first be said that a typographical error like this, with nothing else, likely fails to qualify as the sort of "clear evidence" required to rebut the presumption that an agency properly designated the administrative record.[23] And if the dispute were limited to the weight of a typographical error, Industry Plaintiffs would fail to meet their rebuttal burden.

---

[17] ECF No. 49.

[18] ECF No. 52 at 2.

[19] *Id.* at 4.

[20] *Id.* at 5.

[21] *Id.* at 4–5.

[22] ECF No. 52-4 at 4 ("On June 8, 2022, I finalized the LEPC Summary of Conservation Programs document. On April 14, 2023, I converted the LEPC Summary of Conservation Programs from its native Word document format to a PDF for inclusion in the Administrative Record. The Index to the Administrative Record inadvertently reflects the date of the PDF conversion. However, the version of FWS19187-FWS19205 that came before the agency decisionmaker was considered in reaching the challenged decision was created on June 8, 2022.").

[23] ECF No. 52 at 5 (citing *Save Barton Creek Ass'n v. Texas Dep't of Transportation*, No. 1:19-CV-761-RP, 2021 WL 3849723, at *2 (W.D. Tex. Aug. 27, 2021) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

But Industry Plaintiffs also argue that an earlier creation date is at odds with the Species Status Assessment and the Final Rule.[24] Indeed, both the SSA and Final Rule assert that the Service lacked data to make future projections of benefits under the Southern Plains Grassland Program.[25] In contrast, the LEPC Summary "offers new reasons for its decision to list the species without conducting a PECE analysis of new conservation efforts."[26] As pointed out by Industry Plaintiffs, "the Post-Litigation Memo claims it was prepared to 'provide[] background documentation to support [the Service's] conclusion that the current and projected future effects of all of the identified LEPC conservation programs [were] considered in any determination based off of the SSA, including the 2022 listing determination'—meaning, 'separate analyses for these efforts [was] not needed under PECE.'[27] For whatever reason, the Service fails to address these contradictions pointed out by Industry Plaintiffs.

The Court therefore **GRANTS** Industry Plaintiffs' motion to strike and **ORDERS** the LEPC Summary Memo, bearing Bates Nos. FWS19187–FWS19205 struck from the Administrative Record.[28]

## II.   Industry Plaintiffs' motion to compel completion and supplementation

A court reviewing agency action "review[s] the whole record or those parts of it cited by a party."[29] "The Supreme Court has ruled that judicial review is to be based on the 'full'

---

[24] ECF No. 49 at 3–4.

[25] *Id.*

[26] *Id.* at 4.

[27] *Id.* at 3–4.

[28] *Id.*

[29] 5 U.S.C. § 706.

administrative record that was before the agency at the time of the decision."[30] "[A] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those upon which the agency relied in its final decision."[31] "Conversely, matters not considered by the agency are generally outside the record, are legally irrelevant, and are therefore not discoverable."[32] But an agency "may not unilaterally determine what constitutes the administrative record."[33] It is merely "entitled to a presumption of regularity in discharging its duty."[34]

When a party moves to compel completion of the administrative record, it must show that there is a "reasonable basis to believe that materials considered by agency decisionmakers are not in the record."[35] A party seeking supplementation, on the other hand, aims its request at extra-record material that the agency did not consider and may only issue by showing "unusual circumstances justifying a departure."[36]

Industry Plaintiffs argue that the Service withheld four categories of documents : (1) documents (specifically, raw data and modeling) cited in the Species Status Assessment Report, (2) documents circulated internally during the SSA process, (3) documents exchanged with other agencies, and (4) emails exchanged with the Western Association of

---

[30] *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981) (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420).

[31] *City of Dallas, Tex. v. Hall*, No. CIV.A. 307CV0060-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007).

[32] *See Exxon Corp.*, 91 F.R.D. at 33.

[33] *Id.*

[34] *W&T Offshore, Inc. v. Jewell*, No. 14-CV-2449, 2016 WL 5724907, at *2 (W.D. La. Sept. 30, 2016)

[35] *City of Dallas, Tex.*, 2007 WL 3257188, at *8.

[36] *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010).

Fish and Wildlife Agencies.[37] Industry Plaintiffs also seek supplementation of the record as to ESA process, seeing evidence of bad faith and improper conduct.[38] Industry Plaintiffs contend that the Service either failed to produce these buckets of documents in violation of the Service's requirement to put up the "entire" Administrative Record for judicial review or failed to provide a log of withheld documents.[39] The Service, on the other hand, categorizes these document sets differently, understanding that Industry Plaintiffs seek "(1) post-decisional and irrelevant communications; (2) raw data, modeling, and outputs already summarized in other record documents; and (3) internal pre-decisional and deliberative communications."[40] The Service also understands that it is under no obligation to produce a log of withheld documents because it has not asserted the deliberative process privilege and its own guidelines do not independently mandate a log of withheld documents.[41]

## DISCUSSION

### A.      Withheld raw data and modeling

Industry Plaintiffs seek raw data and modeling summarized and cited to in the SSA, and ultimately used by the decisionmaker to list the lesser prairie chicken as endangered. The parties agree that the Service used these data and modeling to determine the current and future impact of anthropogenic features on the lesser prairie chicken's habitat.[42] They

---

[37] ECF No. 50 at 4.

[38] *See* ECF No. 50 at 9-10.

[39] *Id.* at 2.

[40] ECF No. 57 at 2. As to the raw data, modeling, and so on, the Service complains that inclusion of such information already summarized in other record documents would likely implicate "an additional terabyte of data." *Id.*

[41] ECF No. 57 at 12 n.5 & 14–15.

[42] *See generally* ECF Nos. 50, 57.

disagree, however, on whether the decisionmaker considered them through their citation in summaries.

Ultimately, Industry Plaintiffs show that the record is incomplete without the raw data and modeling. They argue that the Service does not dispute "that the quantity of un-impacted land available for habitat was a critical factor in its analysis of the Lesser Prairie Chicken's viability," that the Service gathered data and created models for the SSA to that end, and yet the Service withholds these documents for no reason other than the decisionmaker's subordinates presented that factual content in summary form to the decisionmaker.[43] They also charge the Service with bifurcating its listing process into a fact-finding phase and a deliberation stage, understanding that this tactic might allow the Service to squirrel away adverse data (and possibly premature decision making) into an earlier, fact-finding process unreachable by judicial review.[44] In other words, they view this tactic as akin to agency smurfing.[45] Perhaps. But at best this is smurfing of a different stripe and the Court declines to extend that concept to apply here. The Service admits that it used the relevant data and modeling "in the SSA to estimate the current condition of usable habitat within the lesser prairie-chicken's range and the future condition of that landscape."[46] The "modeling identified natural and anthropogenic features across the species' range, both current and expected in the future, that may render an area usable or non-usable habitat, in light of

---

[43] ECF No. 50 at 6–7.

[44] *Id.* at 7.

[45] *Tex. v. Texas v. United States Dep't of Health & Hum. Servs.*, 681 F. Supp. 3d 665 (W.D. Tex. 2023) ("Agency smurfing, similar to financial smurfing, occurs when the executive branch smurfs one policy goal into multiple, supposedly 'unreviewable' and 'unchallengeable' pieces.").

[46] ECF No. 57 at 8.

expected conservation efforts and impacts."[47] But according to the Service, these data and modeling were never put before the decisionmaker, directly or indirectly. Instead, the decisionmaker reviewed "summary tables included within the SSA[, which] represent dozens of data sets and more than 400 modeled output results, amounting to approximately 750 gigabytes to 1 terabyte of data."[48] Indirect consideration of such a cache, so the argument goes, would be a stretch too far.[49]

It is unreasonable to believe that underlying data and modeling generated by the Service were not considered merely because their volume is unwieldy enough to require summary tables. It is also clear that these documents played a central role in the Service's decision to list; the Service cannot and does not state otherwise. The facts here may therefore be easily distinguished from other courts who have declined to find "consideration through citation."[50] Those courts correctly decline to find indirect consideration when the sole hook into Document B is its citation in Document A, the latter of which was presented to and considered by a decisionmaker.[51] A sister court in this Circuit expressed healthy

---

[47] *Id.*

[48] *Id.* at 9.

[49] *Id.*

[50] *See e.g. Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1277 (D. Colo. 2010).

[51] *See e.g. Stevens v. United States Army Corps of Engineers*, No. 2:21-CV-01423-RAJ, 2023 WL 2138347, at *2 (W.D. Wash. Feb. 21, 2023) ("Here, Plaintiff, when referring to document 1, makes a consideration through citation argument when saying it 'cited to [document 1]' in their comment submitted to Corps, so the 'Corps clearly considered – at least indirectly – or the Corps clearly should have considered' it. Plaintiff makes the same argument for documents 2, 3, and 6 Plaintiff cannot present concrete, non-speculative evidence that the Corps indirectly or directly considered the Documents.") (citations omitted); *Gupta v. United States Att'y Gen.*, No. 6:13-CV-1027-ORL40KRS, 2015 WL 13788645, at *1 (M.D. Fla. May 5, 2015) ("The mere fact that Martha Medina's Notice of Intent to Deny references the transfer of files to another office in no way establishes that the contents of the files were considered, directly or indirectly, by Medina in the rendering of the February 7, 2013

skepticism that such a rule would require an agency to include every source cited or discussed in the primary documents it considered, resulting in an "endless search merely to compile the administrative record."[52] No such search is required here. The Service compiled these data and related modeling on its own and there is little worry that a search for such items would cause the Service to suffer a heavy lift in that regard. Finally, data and modeling cited in the SSA were "heavily relied upon in the [Service's] final decision [and] should be included in the administrative record even if the final decision-makers did not actually read the [data and modeling]."[53] Finally, as a sort of backstop, it is not unlikely that this "data constitutes background information needed to determine whether the agency considered all the relevant factors"[54] and therefore might be separately subject to a motion to supplement, had such a motion been raised.

The Court therefore **GRANTS** the motion to complete the record as to the data and modeling cited to in the SSA because these documents were at least indirectly considered through the critical role they played in their summary form in the SSA.[55]

---

decision at issue. To the extent that he argues consideration through citation, Gupta's argument fails."); *BBX Cap. Corp. v. Fed. Deposit Ins. Corp.*, No. 17-62317-CIV, 2018 WL 6531601, at *3 (S.D. Fla. Aug. 15, 2018) ("BBX cannot use the July 2017 letter as a basis for insertion of the SEC Litigation materials into the record. The inclusion of a summary judgment order from the SEC Litigation in the FDIC's record does not compel a different result, as BBX still must show that the other SEC Litigation materials it seeks to insert into the record, 'were presented to the agenc[ies.]'").

[52] *Knight v. U.S. Army Corps of Engineers*, No. 4:18-CV-352, 2019 WL 3413423, at *2 (E.D. Tex. July 29, 2019) (collecting cases).

[53] *W. Watersheds Project v. Bureau of Land Mgmt.*, No. 3:11-CV-00053-HDM, 2012 WL 13937, at *1 (D. Nev. Jan. 4, 2012) (citing *Center for Native Ecosystems*, 711 F. Supp. 2d at 1275–76.

[54] *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (cleaned up).

[55] ECF No. 50. To the extent the Service believes this information is deliberative and therefore excludable from the record—and there's little indication that the Service feels this

### B.     Those documents withheld as deliberative materials

As to those documents withheld as deliberative, Industry Plaintiffs have shown that the Administrative Record is incomplete. This calculus is simple. After Industry Plaintiffs received the provisional record, they conferred with the Service about various categories of documents not included in that record—those circulated internally during the SSA process and exchanged with other agencies, and emails exchanged with the Western Association of Fish and Wildlife Agencies.[56] The Service responded broadly that those documents were deliberative material and therefore not included in the record.[57] The parties continue to maintain their positions now that the Administrative Record has been lodged and certified. So as to the completeness question, the Service's "admission that deliberative materials were omitted is [therefore] sufficient to overcome the presumption that the administrative record is complete."[58]

Whether the growing judicial tolerance for withholding deliberative material disturbs the above calculus requires a harder look. Before this trend gained much momentum, a sister district court refused to address an agency's claims of privilege over deliberative materials

---

way—factual information must generally be disclosed. *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

[56] ECF No 50 at 3–4.

[57] ECF No. 50-7 at 2–3.

[58] *Ksanka Kupaqa Xa'lcin v. United States Fish & Wildlife Serv.*, No. CV 19-20-M-DWM, 2020 WL 4193110, at *2 (D. Mont. Mar. 9, 2020); *See also Exxon Mobil Corp. v. Mnuchin*, No. 3:17-CV-1930-B, 2018 WL 10396585, at *3 (N. D. Tex. June 26, 2018), *objections overruled*, No. 3:17-CV-1930-B, 2018 WL 4103724 (N. D. Tex. Aug. 29, 2018) (finding plaintiffs there met their burden where the agency defendants certified a record that they admit included only "non-privileged documents considered.").

until the privilege had been properly invoked.[59] In more recent years, certain circuit courts have entertained the idea that deliberative materials may be withheld without invocation of the privilege because they are either irrelevant, or immaterial and therefore not discoverable, or "not part of the administrative record to begin with."[60] By viewing these materials as deliberative as a matter of course, these courts reason that a privilege log is required only in the narrow circumstance where there is a "showing of bad faith or improper behavior."[61] These holdings have created discordance among the district courts.[62]

"No authority binds the Court to either order or decline to order a privilege log in an APA record review case under 5 U.S.C. § 706, and there is no prevailing consensus in the persuasive authority."[63] "If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege."[64] Moreover, "[a] log is a practical and meaningful way to allow a party and ultimately a court to assess whether an agency has properly characterized a document as part of the deliberative process."[65] To hold otherwise would ignore that "[a]

---

[59] *See Exxon Corp.*, 91 F.R.D. at 44.

[60] *See Oceana v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 997 (9th Cir. 2023).

[61] *Blue Mountains Biodiversity Project*, 72 F.4th at 997 (citing *Oceana*, 920 F.3d at 865).

[62] *See Nat'l Council of Negro Women v. Buttigieg*, No. 1:22-CV-314-HSO-BWR, 2024 WL 1287611, at *5 (S.D. Miss. Mar. 26, 2024) (collecting cases, but note that some of these cases pre-date *Oceana*).

[63] *Nat'l Council of Negro Women v. Buttigieg*, No. 1:22-CV-314-HSO-BWR, 2024 WL 1287611, at *5 (S.D. Miss. Mar. 26, 2024). Note also that this order issued by a sister court in Mississippi collects dozens of cases within and beyond the Circuit showing the utter lack of cohesion among the trial courts.

[64] *Exxon Mobil Corp.*, 2018 WL 171623, at *2.

[65] *National Council of Negro Women*, 2024 WL 1287611, at *5

popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both."[66]

So, despite this disturbing trend, the surest path forward requires a privilege log.

The Court therefore **GRANTS** Industry Plaintiffs' motion for completion of the Administrative Record as to documents withheld as deliberative.

### C.    The WAFWA emails

Industry Plaintiffs seek emails exchanged with the Western Association of Fish and Wildlife Agencies they believe relate to the "best available scientific and commercial data, including new genomic testing and forthcoming publications."[67] The Service's response indicates that some emails exchanged with WAFWA dip into the post-decisional era.[68] After careful review of the briefing, the Court sees no argument posed by Industry Plaintiffs acknowledging that some of these materials are post-decisional communications. This is in error. Industry Plaintiffs therefore seek in part materials that are not contemporaneous with the "full administrative record that was before the [Service] at the time [it] made [its] decision."[69] These materials are not of the Administrative Record and Industry Plaintiffs' motion is **DENIED** as to those emails.

---

[66] Letter from James Madison to W.T. Barry (Aug. 4, 1822), in 9 THE WRITINGS OF JAMES MADISON 103 (Gaillard Hunt ed., 1910).
[67] ECF No. 50 at 9.
[68] ECF No. 57 at 5–7.
[69] *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420.

As to the pre-decisional WAFWA emails, the Service is required by its own guidance to include in the Administrative Record those materials which tell a "complete story."[70] Moreover, though the Service claims it need not include research in draft form, Industry Plaintiffs point out that it had done so on separate occasions all the same.[71] The Court therefore **GRANTS** the motion to compel completion of the record as to the pre-decisional WAFWA emails only.

### D.  Those documents subject to the motion to supplement

As articulated by the Fifth Circuit, supplementation is warranted in three circumstances: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review."[72] The burden lies on the moving party to show "unusual circumstances justifying a departure from the general presumption that review is limited to the record compiled by the agency."[73] Supplementation may also issue when there has been a "strong showing of bad faith or improper behavior."[74] This latter scenario poses a more strenuous uphill climb given "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas . . . and work with staff attorneys to substantiate the legal basis for a

---

[70] See U.S. FISH & WILDLIFE SERVICE, Compiling a Decision File and an Administrative Record, at 5.4.A(s) (Mar. 2, 2007), available at https://www.fws.gov/policy-library/282fw5.

[71] ECF No. 61 at 9.

[72] *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 694 (S.D. Tex. 2015) (citing *Medina County Environmental Action Ass'n*, 602 F.3d at 706.

[73] *Medina County Environmental Action Ass'n*, 602 F.3d at 706.

[74] *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420.

preferred policy."[75] "Agency policymaking is not a rarified technocratic process, unaffected by political considerations or the presence of Presidential power."[76]

Industry Plaintiffs argue that the record merits supplementation of "documents circulated during both phases of the decision-making process" due to bad faith or improper behavior—specifically, that the Service's science team accused the service of "predetermining its positions long before the fact finding" related to the impact radii of oil, gas, and wind energy facilities on the available habitat.[77] In support, Industry Plaintiffs point to email exhibits from Science Team members voicing their concerns that the Service had been made clear that certain findings would be (and ultimately were) ignored if they were adverse to the Service's predefined position.[78] While these sorts of evidence may later factor into a lack of confidence in the objectivity of the Service's decision making process,[79] or show that the decisionmaker's stated rationale did not factor at all into her decision,[80] the most warranted at this time is to order the complete administrative record,[81] as done above.

---

[75] *Dep't of Com. v. New York*, 588 U.S. 752, 755 (2019); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983).

[76] *Id.* at 781 (citation omitted).

[77] ECF No. 50 at 15.

[78] *Id.* at 15–17.

[79] *See Ctr. For Biological Diversity v. Kempthorne,* No. CV 07-0038-PHX-MHM, 2008 WL 659822, at *12 (D. Ariz. Mar. 6, 2008).

[80] *Dep't of Com.*, 588 U.S. at 782.

[81] *Id.* at 786 (Thomas, J., concurring in part) ("For the first time ever, the Court invalidates an agency action solely because it questions the sincerity of the agency's otherwise adequate rationale. Echoing the din of suspicion and distrust that seems to typify modern discourse, the Court declares the Secretary's memorandum 'pretextual' because, 'viewing the evidence as a whole,' his explanation that including a citizenship question on the census would help enforce the Voting Rights Act (VRA) 'seems to have been contrived.' The Court does not hold that the Secretary merely had *additional*, unstated reasons for reinstating the citizenship question. Rather, it holds that the Secretary's stated rationale did not factor *at all* into his decision.") (emphases in original) (citations omitted).

15

The Court therefore **DENIES** Industry Plaintiffs' request for supplementation of the record at this time.

### III.    State Plaintiffs' objections

State Plaintiffs initially objected to twenty-one documents they argued required supplementation or completion.[82] In response, the Service agreed to add seven documents to the Administrative Record, which were inadvertently omitted.[83] By the time State Plaintiffs filed their reply, the parties narrowed their dispute further.[84] State Plaintiffs take the Service on its word that documents FWS02448-FWS02450, FWS02969-FWS02970, FWS05130-FWS05136, FWS13419 and FWS31859-FWS31861 were not considered or reviewed by the decisionmaker.[85] State Plaintiffs argue that the remaining disputed items are literature and data that the Service cites or summarizes in its own work, and studies cited by peer reviewers that the Service considered.[86] The Service responds that these documents were (1) not considered directly by the decisionmaker, (2) duplicative to the Administrative Record, or (3) outside the scope of information needed to make the listing decision.

To the extent that State Plaintiffs seek raw data and modeling, the Court **GRANTS** the motion to complete for the same reasons stated in the earlier section addressing the same

---

[82] ECF No. 51.

[83] ECF No. 58. The following documents shall be added to the Administrative Record: FWS02454-FWS02456,            FWS02539-FWS02540,            FWS02539-FWS02540, 198~1~Attach~LEPC      SSA      Draft      8_25_2017      Comments      by      Liza      Rossi, 198~1~Attach~LEPC SSA Draft 8_25_2017 Comments by Liza Rossi, FWS07072, and FWS18778-FWS18779.

[84] ECF No. 62. This document was docketed as a motion and a reply, given State Plaintiffs failed to support their initial motion. The Service requested leave to file a sur-reply under opposition, ECF No. 64, which this Court granted by text order after no briefing followed the Service's motion for leave to file sur-reply.

[85] ECF No. 62 at 1.

[86] *See* ECF No. 62 at 3–5.

16

sort of materials. And to the extent that the Service claims it need not complete the record with deliberative materials, the Court **GRANTS** the motion for the same reasons stated in the earlier section addressing the deliberative process privilege.

The Court now turns briefly to the Service's objections aimed at the work cited within peer review documents.[87] The Service admits it reviewed each cited work but determined that "many" of these cited works were duplicative or exceed the scope of information needed to establish the lesser prairie chicken's biological status.[88] As to duplicity, the "full administrative record" as it was before the agency at the time of the decision "does not account for convenience or practicality."[89] The Service likewise makes no attempt to quantify those citations which were neither duplicative nor excessive in scope. In a similar vein, the Service admits it evaluated 93 studies presented "in a screenshot of an interactive portal operated by Southwest Power Pool," but states that it did not fully evaluate them and therefore did not rely on them in the Final Rule.[90] Of course, the question is not yet one of reliance but one of consideration—were these documents considered directly or indirectly? "[A] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those upon which the agency relied in its final decision."[91] The Service freely admits that they were. The Court therefore **GRANTS** the motion to complete as to these documents as well.

---

[87] Namely, Administrative Record documents FWS16744-FWS16749, FWS16750-FWS16753, FWS16754-FWS16759.

[88] ECF No. 58 at 14–15.

[89] *Fath v. Texas Dep't of Transportation*, No. 1:16-CV-234-LY, 2017 WL 11633326, at *2 (W.D. Tex. Mar. 17, 2017).

[90] Administrative Record document FWS31859-FWS31861.

[91] *City of Dallas*, 2007 WL 3257188, at *4.

Three documents remain. State Plaintiffs seek an internal guidance document titled, *Adaptive Management: The U.S. Department of the Interior Technical Guide*, cited in a letter from the North American Grouse Partnership.[92] It also seeks the citations in the Lesser Prairie-Chicken Species Status Assessment Contributors Working Group Charter, a document written by the Service as part of the development of the SSA.[93] And it seeks the remaining citations in a draft of a manuscript titled "Integrating data sources for species status assessment: application to the lesser prairie-chicken," a document likewise written by the Service.[94]

As to the first document, the Service freely admits that the Service considered the letter from the North American Grouse Partnership. But the Service declares that it did *not* consider its own internal guidance document on adaptive management, even though the NAGP cited it for the Service's convenience.[95] "[E]ven if these policies were not considered by the Department of the Interior's management, such policies may still bear on this court's analysis."[96] The Court therefore **GRANTS** the motion to complete the record with the Service's own internal guidance document as requested. As to the remaining documents found in citations of Service-authored material, because the Service freely admits that these

---

[92] ECF No. 51 at 3.
[93] *Id.* at 6.
[94] ECF No. 51 at 4.
[95] ECF No. 58 at 10.
[96] *Cherokee Nation v. Jewell*, No. 12-CV-493-GKF-TLW, 2013 WL 5329787, at *8 (N.D. Okla. Sept. 20, 2013).

documents were considered, no "consideration through citation" issue presents itself.[97] The Court **GRANTS** the motion to complete the record accordingly.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Industry Plaintiffs' motion to strike,[98] and **ORDERS** the LEPC Summary Memo, bearing Bates Nos.FWS19187–FWS19205, struck from the Administrative Record.

The Court also **GRANTS IN PART AND DENIES IN PART** Industry Plaintiffs' motion to complete,[99] and **ORDERS**:

- the Service to complete the Administrative Record with the raw data and modeling cited to in the Special Species Assessment;

- the Service to complete the Administrative Record with those documents withheld as deliberative, or should the Service maintain its position that certain or all of these documents are deliberative materials and likewise wish to withhold those documents, that the Service produce a log of all documents withheld on that basis;

- in the event that the Service produces a privilege log, the Court **ORDERS** production of those withheld documents for in camera review;[100] and

---

[97] *See W. Watersheds Project v. Bureau of Land Mgmt.*, No. 3:11-CV-00053-HDM, 2012 WL 13937, at *1 (D. Nev. Jan. 4, 2012) ("[I]f a certain study cited in a subordinate's recommendation is shown by clear evidence to have been heavily relied upon in the agency's final decision, then the study should be included in the administrative record even if the final decision-makers did not actually read the study. The touchstone is the decision-makers' actual consideration. However, merely arguing 'consideration through citation' will not suffice because that 'argument stretches the chain of indirect causation to its breaking point' and it fails to give appropriate deference to the agency's designation of the record.") (citations omitted).

[98] ECF No. 49.

[99] ECF No. 50.

- the Service to complete the Administrative Record with the identified pre-decisional Western Association of Fish and Wildlife Agencies' emails.

  The Court also **DENIES** Industry Plaintiffs' request for supplementation.[101]

  The Court also **GRANTS** State Plaintiffs' motion to complete,[102] and **ORDERS:**

- the Service to complete the Administrative with the requested raw data and modeling, work cited by peer reviewers, and other materials described above;

- the Service to complete the Administrative Record with those documents withheld as deliberative, or should the Service maintain its position that certain or all of these documents are deliberative materials and likewise wish to withhold those documents, that the Service produce a log of all documents withheld on that basis; and

- in the event that the Service produces a privilege log, the Court **ORDERS** production of those withheld documents for in camera review.

---

[100] *See* CORMAC MCCARTHY, BLOOD MERIDIAN, OR, THE EVENING REDNESS IN THE WEST 89 (First Vintage Int'l ed. 1985). ("It is not necessary, [the Judge] said, that the principals here be in possession of the facts concerning their case, for their acts will ultimately accommodate history with or without their understanding. But it is consistent with notions of right principle that these facts - to the extent that they can be readily made to do so - should find a repository in the witness of some third party.").

[101] ECF No. 50.

[102] ECF No. 51.

The Service is **ORDERED** to comply within 30 days of entry of this Order.

It is so **ORDERED**.

SIGNED this 20th day of September, 2024.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE