**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **STATE OF TEXAS, ET AL.,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 7:23-cv-00047-DC** |
| **DEPARTMENT OF THE INTERIOR,** | § | |
| **ET AL.,** | § | |
| *Defendants.* | § | |
| | § | |

**DEFENDANTS' MOTION FOR VOLUNTARY VACATUR AND REMAND**

Defendants, the United States Department of the Interior; the United States Fish and Wildlife Service ("Service"); Doug Burgum,[1] in his official capacity as Secretary of the Department of the Interior; and Paul Souza,[2] in his official capacity as Regional Director of the Pacific Southwest Region, exercising the delegated authority of the Director of the Service, respectfully file this motion for voluntary vacatur and remand of the final rule titled "Endangered and Threatened Wildlife and Plants; Lesser Prairie-Chicken; Threatened Status With Section 4(d) Rule for the Northern Distinct Population Segment and Endangered Status for the Southern Distinct Population Segment." 87 Fed. Reg. 72674 (Nov. 25, 2022). The Service has identified a serious defect in this final rule that warrants vacatur. Additionally, voluntary vacatur and remand would allow the Service to address the issues raised by Plaintiffs without further litigation and would conserve the resources of the parties and the Court.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Doug Burgum is automatically substituted for Debra Haaland.

[2] Pursuant to Fed. R. Civ. P. 25(d), Paul Souza is automatically substituted for Martha Williams.

Counsel for State Plaintiffs indicated that they do not oppose this Motion.[3] Counsel for Industry Plaintiffs likewise indicated that they do not oppose but reserved the right to respond further as necessary after reviewing the Motion.[4] Counsel for Proposed-Intervenors, the Center for Biological Diversity and Texas Campaign for the Environment, indicated that they oppose this Motion.

## STATUTORY BACKGROUND

### I.    The Endangered Species Act

The Endangered Species Act ("ESA") provides "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species[.]" 16 U.S.C. § 1531(b). Section 4 of the ESA requires the Secretary of the Interior[5] ("Secretary") to determine whether any species should be listed as endangered or threatened. *Id.* § 1533(a).

"[S]pecies," as defined under the ESA, includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). Because the term "distinct population segment"

---

[3] "State Plaintiffs" refers to the states of Texas, Kansas, and Oklahoma, who brought suit in *State of Texas v. Department of the Interior*, No. 7:23-cv-00047 (W.D. Tex. Mar. 21, 2023).

[4] "Industry Plaintiffs" refers to the Kansas Independent Oil & Gas Association, the Petroleum Alliance of Oklahoma, the Permian Basin Petroleum Association, the National Cattlemen's Beef Association, the Texas Cattle Feeders Association, the Kansas Livestock Association, the New Mexico Cattle Growers Association, and the Oklahoma Cattlemen's Association, who brought suit in *Permian Basin Petroleum Association. v. Department of the Interior*, No. 7:23-cv-00049 (W.D. Tex. Mar. 21, 2023).

[5] The Secretaries of the Interior and Commerce share responsibility for making listing determinations under the ESA. 16 U.S.C. § 1532(15). The Secretary of the Interior, acting through the Service, is generally responsible for all terrestrial and freshwater species, including the lesser prairie-chicken.

("DPS") is not defined by statute, the Service (in conjunction with the National Marine Fisheries

Service) adopted the "Policy Regarding the Recognition of Distinct Vertebrate Population

Segments Under the Endangered Species Act," 61 Fed. Reg. 4722 (Feb. 7, 1996) ("DPS Policy"),

to clarify its interpretation of the term. To qualify as a "distinct population segment," a

population must be both discrete and significant. *Id.* at 4725. A population may be discrete if it is

"markedly separated from other populations of the same taxon as a consequence of physical,

physiological, ecological, or behavioral factors" or it is "delimited by international governmental

boundaries[.]" *Id.* A population may be significant where it persists in an unusual ecological

setting; its loss would result in a significant gap in the range of the taxon; it represents the only

surviving natural occurrence of the taxon that is more abundant elsewhere; or where the

population segment differs markedly from other populations of the same species due to unique

genetic characteristics. *Id.* Congress has indicated that the authority to list DPSs be used

"sparingly and only when the biological evidence indicates that such action is warranted." *Id.* at

4722

Following a determination that a population segment qualifies as a "distinct population

segment," the Service considers the DPS's conservation status in relation to the five listing

factors identified in ESA Section 4(a)(1). *Id.* at 4725; 16 U.S.C. § 1533(a)(1); *see also Ctr. for

Biological Diversity v. Zinke*, 868 F.3d 1054, 1058 (9th Cir. 2017) ("If a population is found to be

a DPS, the inquiry proceeds to whether it is endangered or threatened").[6] Relying only on the

"best scientific and commercial data available," the Secretary must evaluate these five factors to

---

[6] The five factors are (1) the present or threatened destruction, modification, or curtailment of the
species' habitat or range; (2) overutilization for commercial, recreational, scientific, or
educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory
mechanisms; and (5) other natural or manmade factors affecting its continued existence. *Id.* §
1533(a)(1); 50 C.F.R. § 424.11(c).

determine whether the DPS is "endangered," meaning in danger of extinction throughout all or a significant portion of its range, or "threatened," meaning likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range. 16 U.S.C. §§ 1532(6), (20), 1533(b)(1)(A).

## II.     The Administrative Procedure Act

The Administrative Procedure Act ("APA") prescribes the procedures that federal agencies must follow when exercising their rulemaking authority, including the requirement to proceed by notice and comment rulemaking. *See* 5 U.S.C. § 553. The APA provides a right of judicial review to "[a] person suffering legal wrong because of [an] agency action[.]" *Id.* § 702. A reviewing court will hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "in excess of statutory jurisdiction [or] authority"; or "without observance of procedure required by law[.]" *Id.* § 706(2)(A), (C), (D).

## FACTUAL AND PROCEDURAL BACKGROUND

The lesser prairie-chicken (*Tympanuchus pallidicinctus*) is a unique species of grouse found in the grasslands of southeastern Colorado, southwestern Kansas, eastern New Mexico, western Oklahoma, the Texas panhandle, and the south plains of Texas. 87 Fed. Reg. at 72674. In 1995, the Service received the first petition to list the lesser prairie-chicken as a threatened species under the ESA.[7] 86 Fed. Reg. 29432, 29434 (June 1, 2021). In 1997, the Service issued its finding that the petition presented substantial information indicating that the petitioned action may be warranted, and in 1998 the Service published its 12-month finding concluding that the

---

[7] The ESA provides that an interested party may petition the Service to list, delist, or reclassify a species. 16 U.S.C. § 1533(b)(3).

petitioned action was warranted but precluded by other higher priority listing actions. *Id.* The 12-month finding also identified the lesser prairie-chicken as a candidate for listing. *Id.*

The Service published a proposed rule to list the lesser prairie-chicken as a threatened species in 2012 and, in 2013, published a proposed 4(d) rule to accompany the threatened listing. *Id.* In 2014, the Service concurrently published a final rule listing the lesser prairie-chicken as a threatened species, 79 Fed. Reg. 19974 (Apr. 10, 2014) (the "2014 Listing Rule"), and a 4(d) rule for the species. The 2014 Listing Rule was challenged by multiple groups, including several of the Industry Plaintiffs in this action, in several districts. Ultimately, this Court vacated the 2014 Listing Rule in September 2015, *Permian Basin Petroleum Association v. Department of the Interior*, 127 F. Supp. 3d 700 (W.D. Tex. 2015), which mooted the accompanying 4(d) rule.

In 2016, the Service received a new petition to list the lesser prairie-chicken as endangered throughout its range or, alternatively, in three distinct population segments, and the Service subsequently published a 90-day finding concluding that the petitioned action may be warranted. 86 Fed. Reg. at 29434. In 2021, the Service published a combination 12-month finding and proposed rule, which concluded that two DPSs were appropriate and proposed to list one DPS as endangered and another as threatened with a Section 4(d) rule. *Id.* at 29432. The Service finalized the rules at issue in this litigation on November 25, 2022, when it listed the Northern DPS of the lesser prairie-chicken as threatened and the Southern DPS of the lesser prairie-chicken as endangered (the "Final Listing Rule") and concurrently issued protective regulations for the threatened Northern DPS under ESA Section 4(d) (the "4(d) Rule"). 87 Fed. Reg. at 72674.

In March 2023, State Plaintiffs filed suit challenging the Final Listing Rule and the 4(d) Rule. *State of Texas v. Dept' of the Interior*, No. 23-cv-00047 (W.D. Tex. Mar. 21, 2023), ECF

No. 10 ("State Plfs. Amended Compl."). Industry Plaintiffs filed suit in *Permian Basin Petroleum Association v. Department of the Interior*, No. 7:23-cv-00049 (W.D. Tex. Mar. 21, 2023) shortly thereafter. *See Texas*, No. 7:23-cv-00047, ECF No. 55 ("Industry Plfs. Sec. Amended Compl."). Defendants subsequently moved to consolidate these cases, which this Court granted in July 2023. *Id.*, ECF Nos. 27, 29.

Plaintiffs in both cases raise similar challenges to the Final Listing Rule and 4(d) Rule under the ESA and the APA. Specifically, both cases allege, *inter alia*, that the Service improperly applied its policy for determining DPSs in violation of the ESA and APA. *Compare* State Plfs. Amended Compl. ¶¶ 137, *with* Industry Plfs. Sec. Amended Compl. ¶¶ 112-116.

Kansas Natural Resource Coalition and others filed a third lawsuit in the District of Kansas solely challenging the 4(d) Rule and alleging that the Service should have undertaken economic analyses. *See Kan. Nat. Res. Coal. v. U.S. Fish & Wildlife Serv.*, No. 6:23-cv-1147 (D. Kan. July 20, 2023). Defendants successfully moved for transfer of that case to this Court, but did not move to consolidate the *Kansas* case with the other two cases. *See Kan. Nat. Res. Coal. v. U.S. Fish & Wildlife Serv.*, No. 7:23-cv-00159 (W.D. Tex. Mar. 31, 2025). This Court recently issued its ruling in the *Kansas* case, finding in favor of the Plaintiffs and vacating the challenged 4(d) Rule. *Id.* ECF No. 39. Accordingly, State and Industry Plaintiffs' claims in the instant lawsuits challenging the 4(d) Rule are moot.

## ARGUMENT

In appropriate circumstances, this Court has discretion to vacate agency actions prior to full briefing on the merits, and the Court's exercise of this authority is warranted here. Vacatur of the Final Listing Rule for the lesser prairie-chicken is appropriate because the Service has identified an error in its application of the DPS Policy in making the foundational determination

of what entity might qualify for listing under the ESA. *See* Attachment A ("Jacks Decl.") ¶ 5. Specifically, the Service concedes that it failed to properly support its conclusions under the DPS Policy in the Final Listing Rule when it designated the Northern and Southern DPSs of the lesser prairie-chicken. Jacks Decl. ¶¶ 5-14. After careful review of the Final Listing Rule and the supporting analysis, the Service determined that it did not provide adequate justification and analysis to support the determination that the two identified population segments of the lesser prairie-chicken are "significant" for the purpose of identifying a DPS pursuant to the DPS Policy. Jacks Decl. ¶ 10. In the Final Listing Rule, the Service concluded that both population segments were "significant" because loss of the Southern population segment would result in a significant gap in the range of the species. Jacks Decl. ¶ 12. The Service now believes that conclusion was in error because the Service did not consider whether the gap in the range would actually be significant for the species and, instead, merely restated its finding that the two population segments were physically separated by 95 miles (i.e., "discrete") to conclude that they were also "significant." Jacks Decl. ¶ 13.

The Service concedes that it improperly applied its DPS Policy in a manner that tainted the substance of the Final Listing Rule. Defendants therefore acknowledge that this Court has the discretion to remedy this failure pursuant to Section 706 of the APA. Defendants further recognize that "vacatur of an agency action is the default rule in this Circuit." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024). The Fifth Circuit has held that departure from the default rule in favor of vacatur is only justifiable in those rare cases where (1) there exists a serious possibility that the agency will be able to correct the rule's defects on remand and (2) vacating the action would produce disruptive consequences. *Chamber of Com. v. SEC*, 88 F.4th 1115, 1118 (5th Cir. 2023). Critically, vacatur is warranted for agency

action suffering from "fundamental substantive defects" or for which "there is serious doubt over the substantive correctness of the agency action at issue." *Id.* at 1118 n.2.

The Service has identified a "serious… substantive deficienc[y]" in the Final Listing Rule that warrants vacatur. *Id.* at 1118. The Service's confession that the DPS Policy was improperly applied amounts to a serious substantive defect because it calls into question the very foundation of the listing decision. *See* Jacks Decl. ¶ 14. The ESA directs the Service to "determine whether any species is an endangered species or a threatened species." 16 U.S.C. § 1533(a)(1). When making a listing determination, the Service first determines what constitutes the listable entity for the purposes of the listing determination. *See id.* § 1532(16) (defining "species" to include "any subspecies of fish or wildlife or plants, and any *distinct population segment* of any species of vertebrate fish or wildlife which interbreeds when mature") (emphasis added). In the Final Listing Rule, the Service first determined that there existed a Northern DPS and a Southern DPS of the lesser prairie-chicken and then assessed the listing status of each DPS. 87 Fed. Reg. at 72679-72682, 72744-72746; *see also* Jacks Decl. ¶ 7. As the Service has conceded error as to the justification to support the identification of the entities to be assessed, it follows that the endangered and threatened findings for those entities are invalid. Jacks Decl. ¶ 14. Put another way, if the Northern or Southern DPS does not qualify as a DPS under the DPS Policy, it does not meet the definition of "species" in the ESA and, accordingly, cannot meet the definition of a *threatened* or *endangered* species under the ESA.

As explained above, the misapplication of the DPS Policy taints the very foundation of the Final Listing Rule. Given the seriousness of the error identified, the Service will be unable to correct the rule's defects on remand short of engaging in an entirely new analysis. *See Chamber of Com.*, 88 F.4th at 1118. Accordingly, on remand Service intends to re-evaluate whether the

8

population segments are "significant" as defined in the DPS Policy and intends to consider new

scientific information that has become available since the time of the promulgation of the

challenged Rule to determine whether any listable entity warrants listing under the ESA. Jacks

Decl. ¶¶ 15, 18. The Service has the inherent authority to reconsider its decision and revise or

replace its listing decision, as courts have long recognized.[8] *See, e.g.*, *FCC v. Fox Television*

*Stations, Inc.*, 556 U.S. 502, 515 (2009); *ConocoPhillips Co.*, 612 F.3d at 832 ("Embedded in an

agency's power to make a decision is its power to reconsider that decision."); *Macktal*, 286 F.3d

at 825-26 ("[I]t is generally accepted that in the absence of a specific statutory limitation, an

administrative agency has the inherent authority to reconsider its decisions."); *Frito-Lay, Inc.*, 20

F. Supp. 3d at 552-53 ("When an agency action is under review by a federal court, the agency

may . . . seek a remand to reconsider its decision . . . .") (citing *SKF USA, Inc. v. United States*,

---

[8] Agency reconsideration remains available at this stage of the litigation. In the Fifth Circuit, agency reconsideration must be sought within a reasonable amount of time and the notice of the agency's intent to reconsider must be given to the parties. *ConocoPhillips Co. v. EPA*, 612 F.3d 822, 832 (5th Cir. 2010). "[T]here is no hard and fast rule regarding what constitutes 'reasonable time' with respect to voluntary remand." *Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 555 (N.D. Tex. 2014). Periods of up to four-and-a-half years have been considered reasonable. *Id.* at 556 (collecting cases). The relevant facts of this case demonstrate that remand is the proper—and equitable—outcome. *See id.* ("The only guideline to be gleaned from the cases is that courts analyze the facts of each case in an effort to reach an equitable outcome."). Here, the Service promulgated the challenged Final Listing Rule in November 2022 and now seeks remand just shy of two-and-a-half years later. Although a period of two-and-a-half years "is substantial, it is not unreasonable." *Id.* Notably, a change in federal administration occurred in January 2025, after which the new administration reviewed Plaintiffs' claims. Jacks Decl. ¶ 5. Upon careful review of the Final Listing Rule and supporting analysis, the new administration realized the Service erred in its application of the DPS Policy. Jacks Decl. ¶ 5. Defendants notified State and Industry Plaintiffs of the Service's intent to seek a remand of the Final Listing Rule soon thereafter. Accordingly, the period that has elapsed between the promulgation of the Final Listing Rule and the Service's request for remand is not unreasonable in the circumstances of this case. *See Franciscan All., Inc. v. Price*, No. 7:16-cv-00108-O, 2017 WL 3616652, at *4 (N.D. Tex. July 10, 2017) (finding remand request timely where request was made approximately three-and-a-half months after federal administration change); *Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002) (taking into account the fact that the agency acted promptly once it decided to reconsider and gave notice to the parties).

254 F.3d 1022, 1027-28 (Fed. Cir. 2001)); *Gulf Restoration Network v. EPA*, No. 18-1632, 2019

U.S. Dist. LEXIS 29340, at *3-4  (E.D. La. Feb. 25, 2019) (finding that agency "raised

substantial and legitimate concerns in support of remand" where it conceded that it failed to

follow the ESA's statutory requirements). As the Service intends to undertake an entirely new

analysis, vacatur of the flawed rule is appropriate.

 Additionally, the Service maintains that vacatur of the Final Listing Rule would not

produce disruptive consequences. *See Chamber of Com.*, 88 F.4th at 1118; Jacks Decl. ¶ 17. As

an initial matter, the Service anticipates publishing a new determination regarding the species'

ESA status by November 30, 2026. Jacks Decl. ¶ 15. Although the species would lack federal

protections under the ESA during this period, at least sixteen different conservation efforts and

programs administered by state, federal, and private entities exist that benefit the lesser prairie-

chicken. Jacks Decl. ¶ 16. Most of these efforts existed prior to the promulgation of the Final

Listing Rule, and the Service expects these conservation efforts to remain in place regardless of

the immediate listing status of the species. Jacks Decl. ¶ 16. Further, despite the Service's

previous determination in the Final Listing Rule that existing conservation measures are

insufficient to conserve the species in the long term (i.e., twenty-five years into the future), the

Service expects that there will be only a minimal impact on the species in the interim due to the

shortened timeline of the Service's re-evaluation. Jacks Decl. ¶ 17.

 If the parties were to litigate this case and the Court were to find the Final Listing Rule

unlawful—which Defendants have already conceded—the proper remedy for the Service's APA

violation would be "vacatur with remand[.]" *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 815 (5th

Cir. 2024). By granting this motion, the same relief can be provided now, without the added

expense of further litigation (here or on appeal). For these reasons, continued litigation of

Plaintiffs' claims would not be productive, and the Court should grant Defendants' request for voluntary vacatur and remand as a proper and equitable resolution of this litigation.

Respectfully submitted this 7th day of May, 2025.

ADAM R.F. GUSTAFSON, Acting Assistant
Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
MEREDITH L. FLAX, Deputy Section Chief
Wildlife and Marine Resources Section
NICOLE M. SMITH, Assistant Section Chief
Wildlife and Marine Resources Section

*/s/ Caitlyn F. Cook*
CAITLYN F. COOK
Trial Attorney
Maryland Bar No. 2112140244
Wildlife and Marine Resources Section
Ben Franklin Station
P. O. Box 7611
Washington, D.C. 20044
(202) 616-1059 (tel.)
(202) 305-0275 (fax)
caitlyn.cook@usdoj.gov

PETER W. BROCKER
Senior Trial Attorney
New York Bar No. 5385448
United States Department of Justice
Natural Resources Section
86 Chambers Street, Fl. 3
New York, NY 10007
O: 212-637-2804
C: 202-598-3370

DAVID B. GOODE
Assistant United States Attorney
Texas Bar No. 24106014
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5850 (phone)
(512) 916-5854 (fax)
david.goode@usdoj.gov

11

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on May 7, 2025, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in this case.

*/s/ Caitlyn F. Cook*
CAITLYN F. COOK

*Attorney for Federal Defendants*