IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS, et al.,** | § | |
| | § | |
| *and* | § | |
| | § | |
| **PERMIAN BASIN PETROLEUM** | § | |
| **ASSOCIATION, et al.,** | § | |
| | § | **MO:23-CV-00047-DC** |
| *Plaintiffs,* | § | **MO:23-CV-00049-DC** |
| | § | |
| **v.** | § | |
| | § | |
| **UNITED STATES DEPARTMENT** | § | |
| **OF THE INTERIOR, et al.,** | § | |
| *Defendants.* | § | |

## OMNIBUS ORDER

Before the Court are several motions in this consolidated case involving the listing

decision of the Lesser Prairie-Chicken. On May 1, 2025, Center for Biological Diversity and

Texas Campaign for the Environment moved for reconsideration of the Court's earlier

August 29, 2023 denial of its intervention.[1] This most recent motion came roughly a week

before the parties' summary judgment deadline. On May 7, 2025, United States Fish and

Wildlife moved—unopposed by the current parties—for vacatur and remand of the rule

listing the Lesser Prairie-Chicken endangered and threatened, citing a serious, foundational

defect in the final rule.[2] On May 9, the Industry Plaintiffs[3] timely moved for summary

---

[1] ECF No. 84.

[2] ECF No. 87.

[3] "Industry Plaintiffs" refers to the Kansas Independent Oil & Gas Association, the
Petroleum Alliance of Oklahoma, the Permian Basin Petroleum Association, the National

judgment.[4] On May 19, the Energy and Wildlife Action Coalition moved to file as friends of the Court.[5] On May 21, the LPC Conservation, LLC moved to intervene for the first time, more than two years into this case's lifespan.[6]

Ultimately, the Court **DENIES** Center's and LPC Conservation's motions to intervene as untimely,[7] **DENIES AS MOOT** Energy and Wildlife's motion to file as friend of the court,[8] **DENIES AS MOOT** Industry Plaintiff's summary judgment motion,[9] and **GRANTS** Fish and Wildlife's motion to vacate and remand the Final Rule.[10] Fish and Wildlife's concession points to serious error at the very foundation of its rule. Mere remand would not cure this error. Nor is this one of those exceptional cases permitting remand alone.

### STATUTORY BACKGROUND

---

Cattlemen's Beef Association, the Texas Cattle Feeders Association, the Kansas Livestock Association, the New Mexico Cattle Growers Association, and the Oklahoma Cattlemen's Association, who brought suit in *Permian Basin Petroleum Association. v. Department of the Interior*, No. 7:23-cv-00049 (W.D. Tex. Mar. 21, 2023). The State Plaintiffs in this case refers to states of Texas, Kansas, and Oklahoma, who brought suit in *State of Texas v. Department of the Interior*, No. 7:23-cv-00047 (W.D. Tex. Mar. 21, 2023).

[4] The State Plaintiffs previously begged off their deadline until the order on Fish and Wildlife's motion to vacate and remand issued. ECF No. 88.

[5] ECF No. 97.

[6] ECF No. 100.

[7] ECF Nos. 84, 87.

[8] ECF No. 97.

[9] ECF No. 92.

[10] ECF No. 87.

The Endangered Species Act provides "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species[.]"[11] Section 4 of the ESA requires the Secretary of the Interior[12] to determine whether any species should be listed as endangered or threatened.[13] "[S]pecies," as defined under the ESA, includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."[14] Because the term "distinct population segment" is not defined by statute, Fish and Wildlife (in conjunction with the National Marine Fisheries Service) adopted the "Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act"[15] to clarify its interpretation of the term. To qualify as a "distinct population segment," a population must be both (a) discrete and (b) significant.[16] A population may be *discrete* if it is "markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors" or it is "delimited by international governmental boundaries[.]"[17] A population may be *significant* where it persists in an unusual ecological setting; its loss would result in a significant gap in the range of the taxon; it represents the only surviving natural occurrence of the taxon that is more abundant

---

[11] 16 U.S.C. § 1531(b).

[12] The Secretaries of the Interior and Commerce share responsibility for making listing determinations under the ESA. 16 U.S.C. § 1532(15). The Secretary of the Interior, acting through the Service, is generally responsible for all terrestrial and freshwater species, including the lesser prairie-chicken.

[13] 16 U.S.C. § 1533(a).

[14] 16 U.S.C. § 1532(16).

[15] 61 Fed. Reg. 4722 (Feb. 7, 1996)

[16] *Id.* at 4725.

[17] *Id.*

elsewhere; or where the population segment differs markedly from other populations of the same species due to unique genetic characteristics.[18] Congress has stated that the authority to list DPSs be used "sparingly and only when the biological evidence indicates that such action is warranted."[19]

Following a determination that a population segment qualifies as a "distinct population segment," Fish and Wildlife considers the DPS's conservation status in relation to the five listing factors identified in ESA.[20] The five factors are (1) the present or threatened destruction, modification, or curtailment of the species' habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; and (5) other natural or manmade factors affecting its continued existence.[21] Relying only on the "best scientific and commercial data available," the Secretary must evaluate these five factors to determine whether the DPS is "endangered," meaning in danger of extinction throughout all or a significant portion of its range, or "threatened," meaning likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range.[22]

The Administrative Procedure Act ("APA") prescribes the procedures that federal agencies must follow when exercising their rulemaking authority, including the requirement

---

[18] *Id.*
[19] *Id.* at 4722.
[20] Section 4(a)(1). *Id.* at 4725; 16 U.S.C. § 1533(a)(1); *see also Ctr. for Biological Diversity v. Zinke*, 868 F.3d 1054, 1058 (9th Cir. 2017) ("If a population is found to be a DPS, the inquiry proceeds to whether it is endangered or threatened").
[21] 16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c).
[22] 16 U.S.C. §§ 1532(6), (20); 16 U.S.C. 1533(b)(1)(A).

to proceed by notice and comment rulemaking.[23] The APA provides a right of judicial review to "[a] person suffering legal wrong because of [an] agency action[.]"[24] A reviewing court will hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "in excess of statutory jurisdiction [or] authority"; or "without observance of procedure required by law[.]"[25]

## FACTUAL AND PROCEDURAL BACKGROUND

Fish and Wildlife first listed the lesser prairie-chicken (*Tympanuchus pallidicinctus*) as a threatened species under the ESA in 2014.[26] The 2014 Listing Rule was challenged by multiple groups, including several of the Industry Plaintiffs here, in several districts. Ultimately, this Court vacated the 2014 Listing Rule in September 2015.[27]

In 2016, Fish and Wildlife received a new petition to list the lesser prairie-chicken as endangered throughout its range or, alternatively, in three distinct population segments, and Fish and Wildlife subsequently published a 90-day finding concluding that the petitioned action may be warranted.[28] In 2021, Fish and Wildlife published a combination 12-month finding and proposed rule, which concluded that two DPSs were appropriate and proposed to list one DPS as endangered and another as threatened with a Section 4(d) rule.[29] Fish and Wildlife finalized the rules at issue here on November 25, 2022, when it listed the Northern DPS of the lesser prairie-chicken as threatened and the Southern DPS of the lesser prairie-

---

[23] *See* 5 U.S.C. § 553.
[24] 5 U.S.C. § 702.
[25] 5 U.S.C. § 706(2)(A), (C), (D).
[26] 79 Fed. Reg. 19974 (Apr. 10, 2014) (the "2014 Listing Rule").
[27] *See Permian Basin Petroleum Ass'n v. Dep't of Interior*, 127 F. Supp. 3d 700 (W.D. Tex. 2015).
[28] 86 Fed. Reg. 29432, 29434 (June 1, 2021).
[29] *Id.* at 29432.

chicken as endangered and concurrently issued protective regulations for the threatened Northern DPS under ESA Section 4(d).[30] In March 2023, State Plaintiffs filed suit challenging the Final Listing Rule.[31] Industry Plaintiffs filed suit shortly thereafter.[32] Plaintiffs in these consolidated cases raise similar challenges to the Final Listing Rule under the ESA and the Administrative Procedure Act. Both cases allege, among other things, that Fish and Wildlife improperly applied its policy for determining DPSs in violation of the ESA and APA.

Following the change in federal administration in January 2025, Fish and Wildlife re-evaluated Plaintiffs' claims.[33] Fish and Wildlife now believes it erred in applying the DPS Policy and did not provide a sufficient justification that the two population segments of the lesser prairie-chicken are significant for the purpose of identifying a DPS.[34] Because the confessed error in the DPS analysis affects the assessment of extinction risk, Fish and Wildlife believes this error warrants immediate vacatur of the listing decision.[35] Accordingly, Defendants moved for voluntary vacatur and remand of the Final Listing Rule.[36]

Following Defendants' vacatur motion, Defendants and State Plaintiffs sought to vacate the deadlines for State Plaintiffs' and Defendants' summary judgment briefing in the

---

[30] 87 Fed. Reg. at 72674.
[31] *State of Texas v. Dep't of Interior, No. 23-cv-00047* (W.D. Tex. Mar. 21, 2023), ECF No. 10.
[32] *Permian Basin Petroleum Association v. Department of the Interior*, No. 7:23-cv-00049 (W.D. Tex. Mar. 21, 2023).
[33] ECF No. 87.
[34] ECF No. 87-1 at 5.
[35] *Id.* at 6.
[36] ECF No. 87.

State of Texas case pending the Court's ruling on Defendants' vacatur and remand request.[37] Industry Plaintiffs preferred to continue with summary judgment briefing and filed their opening brief in the Permian Basin Petroleum Association case shortly after Defendants requested voluntary vacatur and remand.[38] As noted in this opinion's opening section, several groups have sought to intervene to defend the Final Listing Rule.[39]

## STANDARD AND DISCUSSION

Defendants concede that the Final Listing Rule is unlawful. And under the APA, this Court must "set aside agency action[ ] found to be arbitrary [or] capricious, contrary to constitutional right, or without observance of procedure as required by law."[40] Though there is dull rumble about what "set aside" may mean,[41] "[t]he default rule is that vacatur is the appropriate remedy."[42] The Fifth Circuit has observed that

> departure from that default rule is justifiable only in "rare cases" satisfying two conditions: *First*, there must be a "serious possibility" that the agency will be able to correct the rule's defects on remand. Remand without vacatur is therefore inappropriate for agency action suffering from one or more serious procedural or

---

[37] ECF No. 88; *see also* May 8, 2025 Minute Order (granting State Plaintiffs' and Defendants' request to vacate deadlines for summary judgment briefing in No. 7:23-cv-00047).

[38] ECF No. 92.

[39] *See* ECF No. 84 (Center for Biological Diversity and Texas Campaign for the Environment's second motion to intervene); ECF No. 100 (LPC Conservation, LLC's motion to intervene).

[40] *Chamber of Com. of United States v. United States Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023) (citation omitted).

[41] *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (Kavanaugh, J., concurring) (offering the more straightforward understanding—"The APA empowers federal courts to 'hold unlawful and set aside agency action' that, as relevant here, is arbitrary and capricious or is contrary to law. 5 U.S.C. § 706(2). The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules . . .").

[42] *Data Mktg. P'ship v. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).

substantive deficiencies. *Second*, vacating the challenged action would produce "disruptive consequences."[43]

Other courts have opined that an abeyance, rather than remand, might prove the better option when an agency asks for remand before a decision on the merits.[44] Still others have stated that when agency defendants do not clearly concede error, or when the impact of that error is not agreed upon by the parties, "[w]ithout a finding that the Final Order is arbitrary and capricious, or otherwise unlawful, a ruling vacating or setting aside the Final Order is premature."[45] But this is not one of those cases.[46] Fish and Wildlife concedes foundational error and do not ask to go back to square one without vacatur.

No real novel thinking is required to resolve this presumably unusual species of voluntary remand involving a concession of foundational error.[47] On the merits, Fish and Wildlife "must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made" and must consider all important aspects of the task at hand.[48] Conclusory statements "do not constitute adequate agency consideration of an important aspect of a problem."[49] Fish and Wildlife concedes that it

---

[43] *Chamber of Commerce of United States*, 88 F.4th at 1118 (citations omitted).

[44] *See Utah by & through Cox v. Env't Prot. Agency*, No. 23-1157, 2025 WL 1354371, at *4–5 (D.C. Cir. May 2, 2025).

[45] *Frito-Lay, Inc. v. U.S. Dep't of Lab.*, 20 F. Supp. 3d 548, 557 (N.D. Tex. 2014).

[46] *See SKF USA, Inc. v. United States,* 254 F.3d 1022, 1027–28 (Fed. Cir. 2001) (explaining five positions an agency may take when seeking remand, the final of which occurs when an agency believes its original decision was incorrect on the merits and wishes to change the result).

[47] *See, e.g.,* Stuart C. Gillespie, Stuart C. Gillespie, *Pre-Merits Vacatur: An Efficient, Equitable, and Environmentally Sound Remedy*, 39 Pace Envtl. L. Rev. 96, 103 (2022) (discussing at length the availability of pre-merits vacatur).

[48] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

[49] *Louisiana v. United States Dep't of Energy*, 90 F.4th 461, 473 (5th Cir. 2024).

provided an inadequate determination by finding two distinct population segments contrary to DPS Policy such that it failed to consider an important aspect of the problem.[50]

> In the Final Listing Rule, [Fish and Wildlife] concluded that both population segments were "significant" because loss of the Southern population segment would result in a significant gap in the range of the species. [Fish and Wildlife] now believes that conclusion was in error because [Fish and Wildlife] did not consider whether the gap in the range would actually be significant for the species and, instead, merely restated its finding that the two population segments were physically separated by 95 miles (i.e., "discrete") to conclude that they were also "significant."[51]

Fish and Wildlife therefore commits no handwaving when it also concedes that this failure causes the Final Listing Rule to be "unlawful" and therefore "not in accordance to law."[52] Its vacatur request therefore comports with those instructions provided by the APA requiring the setting aside of agency action—courts must "set aside" those actions "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[53]

The Fifth Circuit just last year understood like concessions require vacatur.[54] There, an EPA concession that the administrative record lacked key evidence resulted in vacatur because, "absent record evidence that EPA admits is key in adjudicating the Final Rule, EPA's Final Rule is arbitrary and capricious and must be vacated."[55] Though the EPA conceded a different fault, one of an incomplete administrative record, the calculus is the same here. Vacatur is required when a Final Rule cannot be explained or defended.[56]

---

[50] ECF No. 102.
[51] ECF No. 87 at 7.
[52] ECF No. 87 at 10 (internal citations omitted).
[53] 5 U.S.C. § 706(2).
[54] *Texas v. United States Env't Prot. Agency*, 122 F.4th 1008, 1009 (5th Cir. 2024) (per curiam).
[55] *Id.*
[56] *Id.*

But to cover all bases, this is not one of those "rare cases" requiring remand without vacatur. For one, Fish and Wildlife persuades that the error identified is foundational and cannot be resolved by remand alone. Failure to support the identification of the Lesser Prairie Chicken as distinct population segments taints the findings that those DPSs were listable as endangered and threatened so significantly that a full reconsideration is warranted.[57] Put another way, the task before Fish and Wildlife is to go back and determine the listable entity for purposes of the listing determination. Species, under the ESA, includes "any subspecies of fish or wildlife or plants, and any *distinct population segment* of any species of vertebrate fish or wildlife which interbreeds when mature."[58] Without such a determination, the later endangered and threatened findings have no leg to stand on. Fish and Wildlife is unable to correct this square one error without engaging in an entirely new analysis.

And for another, any disruptive consequences of vacating the Final Rule are short lived and minimized by the sixteen existing voluntary conservation programs and efforts in place across the range of the lesser prairie-chicken.[59] Fish and Wildlife anticipates that by November 30, 2026, it will complete a new finding on the 2016 listing petition that gave rise to the Final Rule.[60] According to the acting Regional Director of Fish and Wildlife, the entire process before it could be completed within 18 months of vacatur of the current Rule.[61] As

---

[57] *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (holding that there was "no possibility that [the agency] could obviate the[ ] conflicts on remand" because the challenge document had "severe . . . deficiencies" and "fundamental substantive defects" that "contradict[ed] significant portions of the [enabling statute]"); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 741 F. Supp. 3d 568, 609 (N.D. Tex. 2024).

[58] 16 U.S.C. § 1533(a)(1).

[59] ECF No. 87-1 at 7–8.

[60] *Id.* at 8.

[61] *Id.*

for the sixteen conservation programs in place, many existed before the 2022 listing decision, are intended to directly mitigate threats to the species and it habitat, and are administered by a variety of Federal agencies, including Fish and Wildlife, State agencies, and private groups.[62] These efforts are not thought to be inadequate over the short term.[63] Rather, even the current listing decision couched their inadequacies in the long term—a span of 25 years.[64]

Vacatur with remand is therefore required. If the parties were to litigate this case and the Court were to find the Final Listing Rule unlawful—which Defendants have already conceded—the proper remedy for the Fish and Wildlife's APA violation would be "vacatur with remand[.]"[65] And of course the parties have continued to litigate. At summary judgment, Fish and Wildlife makes the same concessions.[66] The Court **GRANTS** the motion to remand and vacate without need to assess the parties' briefing on summary judgment. Where "it is not necessary to decide more, it is necessary not to decide more."[67]

As for the would-be intervenors and friends of the Court, the Court denies their motions. Center for Biological Diversity and Texas Campaign for the Environment move the court to reconsider its original motion to intervene, or, in the alternative, move to intervene a second time.[68] The Court denied Center and TCE's motion to intervene where it

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 815 (5th Cir. 2024).

[66] *See* ECF No 107 at 7–9.

[67] *PDK Lab'ys Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part).

[68] ECF No. 84.

fully outlined the relevant case law.[69] It denies intervention again for multiple reasons: (1) Center and TCE now untimely move to intervene—more than two years into the case's lifespan—asking the Court to, at best, effectively stall summary judgment briefing days before it began, or at worst allow a dissenting voice in the mix where Defendants already seek remand and vacatur by concession of error;[70] (2) Center and TCE fail to rebut the presumption that Defendants represent their interest;[71] and (3) they fail to explain their role as defendant-intervenors with no claim or defense whatsoever.[72] What's more, intervention at this point would prejudice a conceded-to case. They could have, of course, as this Court has reminded on two occasions,[73] moved to file as friends of the court—just as another

---

[69] ECF No. 36.

[70] *See United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir. 1990) ("Litigation will have no end if every time the parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air."). Center and TCE move months after they claim to have determined that their interest may no longer be protected and more than two years after their first motion. The Executive Orders they cite, ostensibly to represent that the change in presidential administration clued them in that their interests might no longer be protected by the existing parties, were filed in January 2025. *See* ECF No. 84 at 7. The Department of the Interior press release they cite to issued later, in February 2025. *Id.* Center and TCE do not explain why they should wait three months—till May 1, 2025—to file their motion. It seems instead that their motion comes solely at the expense of the parties' pending resolution. Indeed, Center and TCE admit that they propose to intervene largely to halt what they believe to be an improper resolution. ECF No. 84 at 8 ("For example, if settlement were to include vacatur, the Conservation Groups would argue that this court cannot grant pre-merits vacatur on voluntary remand.").

[71] A presumption of adequate representation exists where "a governmental body or officer charged by law with representing the interests" of the movant is party to the litigation. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025). Center and TCE argue that the change in administration results in a drastic change in position. Even assuming that is true, and that truth is enough to rebut the presumption of adequate representation, Center and TCE fail to explain they move to intervene so late into the new administration.

[72] *See* ECF No. 36 at 9.

[73] ECF No. 84.

group, the Energy and Wildlife Action Coalition so requested.[74] For these reasons, Center and TCE's motion is **DENIED**.[75]

LPC Conservation LLC also moves to intervene on behalf of Defendants.[76] All parties oppose[77] that motion, filed thirteen days after the Industry Plaintiffs' summary judgment briefing began and fourteen days after the motion to vacate and remand. LPC is a portfolio of conservation banks set up to support the lesser prairie chicken, offering mitigation credits to offset habitat loss with investments to the tune of over $40 million in private capital.[78] It claims that its business depends on the bird's listing under the ESA.[79] Without the bird's listing, so it goes, "there will be little or no demand for conservation credits."[80]

LPC's motion is wrought with issues. Its death knell, however, is that other than reciting the standard on intervention, it cites no caselaw where it needs it most, in its argument section. To adequately brief its motion, LPC must "identify relevant legal standards and 'any relevant Fifth Circuit cases.'"[81] LPC cites only to this Courts earlier

---

[74] *See* ECF No. 97. Energy and Wildlife Action Coalition moved for leave to file an amicus curae brief in support of the State Plaintiff's motion for summary judgment. *Id.*

[75] ECF No. 36 at 9 ("The conservation groups may more appropriately represent their interest by filing an amicus brief of no more than twenty pages."); ECF No. 53 ("Given the public interest in this litigation, non-parties may submit briefs from time to time as amici curiae to assist the Court in reaching a proper decision.").

[76] ECF No. 100.

[77] ECF Nos. 103, 104, 105.

[78] ECF No. 100 at 2–3.

[79] *Id.* at 4.

[80] *Id.*

[81] *JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (quotation omitted).

explanation of Rule 24.[82] If it found any cases to support its intervention argument more specifically, it elected against including them until its reply briefing. What's more, the massaging it would take to fit LPC's almost purely narrative motion into the relevant tests for intervention would require this Court to litigate on LPCs behalf. "Briefs are inadequate if they fail to cite any relevant case law . . . and fail to apply the proper test for the disputed issue."[83] LPC's motion to intervene is therefore **DENIED**.

On a related note, the Court **DENIES AS MOOT** Energy and Wildlife's motion to file as friend of the court to brief summary judgment.[84] All other motions are **DENIED AS MOOT**.

CONCLUSION

For the above reasons, the Court **GRANTS** Fish and Wildlife's motion for vacatur and remand,[85] **DENIES** Center and TCE's motion for reconsideration,[86] **DENIES AS MOOT** Industry Plaintiffs' motion for summary judgment,[87] **DENIES AS MOOT** Energy and Wildlife Action Coalition's motion to file as friend of the court,[88] and **DENIES** LPC Conservation LLC's motion to intervene.[89] All other pending motions are denied as moot.

The Court **VACATES** and **REMANDS** the Final Rule titled "Endangered and Threatened Wildlife and Plants; Lesser Prairie-Chicken; Threatened Status With Section 4(d)

---

[82] ECF No. 100 at 2.
[83] *Gurung v. Holder*, 587 F. App'x 834, 837 (5th Cir. 2014).
[84] ECF No. 97.
[85] ECF No. 87.
[86] ECF No. 84.
[87] ECF No. 92.
[88] ECF No. 97.
[89] ECF No. 100.

Rule for the Northern Distinct Population Segment and Endangered Status for the Southern

Distinct Population Segment." 87 Fed. Reg. 72674 (Nov. 25, 2022).

It is so **ORDERED**.

SIGNED this 12th day of August, 2025.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE